318 A.2d 286 (1974)
In the Matter of W. E. P.
In the Matter of R. S.
Nos. 6979, 7047.
District of Columbia Court of Appeals.
Argued November 13, 1973.
Decided April 23, 1974.
Rehearing and Rehearing en Banc Denied May 24, 1974.
*287 Robert A. W. Boraks, Washington, D. C., appointed by this court, for appellant in No. 6979; also appearing on the brief in No. 7047.
Beatrice G. Fuchs, Washington, D. C., appointed by this court, submitted on the brief for appellant in No. 7047.
James N. Dulcan, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.
Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.
REILLY, Chief Judge:
Appellants, both juveniles,[1] were tried jointly and convicted of attempted carnal knowledge of a female child under 16 years of age in violation of D.C.Code 1973, §§ 22-2801, 22-103.[2] In this consolidated appeal they contend (1) that there was insufficient corroborating evidence as to both the identification of appellants and the corpus delicti, and (2) that the carnal knowledge statute is unconstitutional as applied to male youths under 16 years of age.
The complainant's testimony may be summarized as follows: At the time of the offense, she was 13 years of age and a pupil at Hamilton Junior High School. About 2:30 on Monday afternoon, June 5, 1972, she and another girl, V. K., were in the school building on their way to another class when complainant noticed that they were being followed by five boys, including the two appellants, also pupils at the school.
Complainant heard one of the boys say, "Let's get that girl"; and when she and V. K. reached the top of a stairwell, appellant R. S. and another boy grabbed complainant by the arms. V. K. then ran down the stairs and continued to her class, apparently without reporting the incident to anyone. Against complainant's pleas to be unhanded, the boys ushered her down the stairs. On the way down she saw a cousin and handed him 30 cents to give to V. K. so that she would buy her some food on the way home. She did not tell her cousin that she was being seized against her will.
Complainant and her escorts, consisting of appellants and another juvenile, reached the ground floor when one of the boys (appellant W. E. P.) announced that they would proceed to the Farmer's Market, a nearby establishment which was closed that day as it ordinarily was on Mondays. As they left the schoolhouse, complainant got loose and ran back into the building but was pursued and recaptured. The trio then compelled her to go to the Farmer's Market and pushed her into a small storage room there.
They forced her upon a large board with nails protruding from it, and against her resistance pulled off her sandals, shorts, and girdle. Her glasses were broken in *288 the process. Each of the boys removed his trousers and, in turn, lay on top of her and attempted to have sexual intercourse, causing pain in her abdominal and vaginal areas. Complainant also cut her foot and hand on the nails protruding from the board. She was kept there until about 4:30 p. m. at which time she was allowed to dress and leave. She found her pants on a tire standing nearby, but in her haste to depart forgot to put on her girdle. Complainant immediately ran home, some four or five blocks away, and reported the incident to her grandmother and the police, who were already there. At trial, complainant identified appellants as two of her assailants.
Complainant's grandmother testified that the young girl invariably returned home after school by 3:30 in the afternoon. When she did not appear that day, the grandmother went to the school, and not finding her reported her to the police as missing. When the girl ultimately came home, she appeared upset; her hair was disheveled, her clothes in disarray, her pants' zipper and sandals torn, her glasses broken.
A physician, who examined her that evening at D.C. General Hospital, testified that complainant had a superficial cut on her foot, but that tests to determine whether sexual intercourse had recently occurred were inconclusive.
A school security official, who accompanied complainant and her grandmother to the Farmer's Market the following day, testified that he entered an enclosure next to a ramp leading to a parking area on top of the Farmer's Market and found it dark, but was able to locate the light string after complainant indicated exactly where it was. Inside the room he noticed a large board with protruding nails and a girdle lying on top of a tire rim.
At trial, complainant's grandmother identified the girdle as belonging to complainant. Appellants denied all accusations, presenting an alibi defense supported by some witnesses. They also offered witnesses to impeach complainant's credibility.
In sex crimes, corroboration of the victim's testimony by independent evidence is a prerequisite to conviction. Evans v. United States, D.C.App., 299 A.2d 136 (1973); Coltrane v. United States, 135 U. S.App.D.C. 295, 418 F.2d 1131 (1969). As this court, however, held in Evans, "[t]he corroboration that is required need not be direct evidence but may consist of circumstances which tend to support the victim's testimony." 299 A.2d at 139. See Moore v. United States, D.C.App., 306 A.2d 278 (1973). Inasmuch as the principal purpose of requiring corroborative evidence is the "avoidance of baseless accusations," such evidence will suffice ". . . when it would permit the jury to conclude beyond a reasonable doubt that the victim's account of the crime was not a fabrication." United States v. Gray, 155 U.S.App.D.C. 275, 276, 477 F.2d 444, 445 (1973). See Moore v. United States, supra.
In this case the record is replete with corroborative evidence. Complainant's identification of appellants is amply corroborated by testimony establishing that she had an adequate opportunity to observe her assailants. United States v. Hines, 148 U.S.App.D.C. 441, 460 F.2d 949 (1972); United States v. Jenkins, 140 U.S.App.D.C. 392, 436 F.2d 140 (1970); Carter v. United States, 138 U.S.App.D.C. 349, 427 F.2d 619 (1970); Thomas v. United States, 128 U. S.App.D.C. 233, 387 F.2d 191 (1967). The boys she accused attended the same school; she had seen them previously and was able to refer to them by name to the police.[3] Moreover, they were in her presence for two hours during the offense.
The corpus delicti, or the commission of the offense itself, was supported by numerous circumstantial detailsthe cuts *289 on her foot and hand; her disheveled appearance, and the condition of her clothing when she reached home; her prompt report to the police; her ability to point out the light string in the storage room to the school investigator; and the discovery in that room of the board with protruding nails and the girdle on the tire rim. Such evidence was certainly sufficient to enable the court to conclude beyond a reasonable doubt that complainant's account was not a fabrication.
Appellants also rely upon United States v. Wiley, 492 F.2d 547 (D.C.Cir. 1973), where a conviction for carnal knowledge of a young female was reversed because the government had failed to produce medical evidence of sexual intercourse. Such evidence is also lacking in the case at bar. In the Wiley case, the panel which heard argument was divided two to onethe dissenting judge citing numerous authorities for his view that the majority opinion is inconsistent with well established precedent in this jurisdiction. This court, of course, is not bound by the Wiley holding [see M. A. P. v. Ryan, D. C.App., 285 A.2d 310 (1971)] but in any event one distinguishing feature makes it inapposite here. Even assuming that corroborated evidence of sexual intercourse is a necessary element of the offense of carnal knowledge, we note that appellants here were convicted only of attempted carnal knowledge. It is clear that proof of actual sexual congress is not required to sustain a conviction for this crime.
Appellants also contend that D.C.Code 1973, § 22-2801, contravenes their right to due process guaranteed by the Fifth Amendment. They argue that the carnal knowledge section of that statute[4] invidiously discriminates against male youths under 16 years of age engaging in consensual sexual intercourse with females under the age of 16 by making the male participant alone criminally answerable.[5]
This point was not raised below. It is well settled that notice of asserted errors raised for the first time on appeal, even those raising constitutional questions, is entirely within the discretion of the reviewing court. Moore v. Illinois, 408 U.S. 786, 799, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Adams v. United States, D.C.App., 302 A.2d 232 (1973); Hill v. United States, D.C.App., 280 A.2d 925 (1971); United States v. Indiviglio, 352 F.2d 276 (2d Cir. en banc 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). When the defect alleged is the unconstitutionality of the statute upon which the appellant's conviction is based, we have generally declined to exercise this discretion unless ". . . the statute is so clearly unconstitutional that it should have been ruled upon by the trial court despite the failure of appellant to raise the point below . . . ." Williams v. United States, D.C.App., 237 A.2d 539, 540 (1968). See Foster v. United States, D.C. App., 290 A.2d 176 (1972). Cf. Trimble v. United States, 125 U.S.App.D.C. 173, 369 F.2d 950 (1966).
This exception has no application here, for the invidious discrimination attributed to the challenged section of the Code is too tenuous to raise any substantial constitutional issue. Its sanctions apply to ". . . whoever carnally knows and abuses a female child under sixteen years of age" (emphasis added). Thus it is not specifically limited to male offenders. Although physically incapable of committing the prohibited act, a female nevertheless *290 may be charged as a principal under the statute if she aided or abetted the commission of the particular crime. D.C.Code 1973, § 22-105. Moreover, the principal purpose of the statutethe protection of underage females, in contradistinction to male children, from illicit sexual intercourse  is a reasonable classification in view of the fact that only members of the female sex would be susceptible to pregnancy as a result of such conduct.[6] Even accepting the approach of the plurality opinion accompanying the recent Supreme Court holding, Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), (Brennan, Douglas, White, and Marshall, JJ.),[7] to the effect that classifications based upon sex are inherently suspect, we deem the limited scope of the carnal knowledge statute to be constitutionally sound, as its objective is in the interest of the general public. Therefore, the judgments of the trial court must stand.
Affirmed.
NOTES
[1] W.E.P. was 15 years of age and R.S., 14, both at the time of the offense and of trial.
[2] Appellants were initially charged with carnal knowledge, but the trial court convicted them of the lesser included offense as it could not find beyond a reasonable doubt that penetration had occurred.
[3] Complainant testified that she knew R.S. by his given name, and W.E.P. by his nickname.
[4] . . . whoever carnally knows and abuses a female child under sixteen years of age, shall be imprisoned for any period or for life.
[5] Although the equal protection clause does not extend to the District of Columbia per se, discrimination may be "so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). See Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964).
[6] Of course, youths under the age of 16 of both sexes are protected from indecent liberties by D.C.Code 1973, § 22-3501.
[7] See United States v. Bowles, D.C.App., 304 A.2d 277 (1973).