## The STATE of Delaware
### v.
## John T. BROTHERS, Jr., Defendant.

Superior Court of Delaware,
New Castle.

Submitted March 14, 1978.
Decided March 28, 1978.

---

Jerome O. Herlihy, of Herlihy & Herlihy, Wilmington, for defendant.

Eugene M. Hall, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

CHRISTIE, Judge.

Defendant, John T. Brothers, Jr., is charged with the crime of rape second degree in violation of 11 Del.C. § 763.

The indictment reads as follows:

The Grand Jury charges JOHN T. BROTHERS, JR. with the following offense, A FELONY: RAPE SECOND DEGREE in violation of Title 11, Section 763 of the Delaware Code of 1974, as amended.

JOHN T. BROTHERS, JR., a male, on or about the 6th day of September, 1977, in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with . . . , a female, not his wife, who was less than sixteen years old and he was over four years older, without her consent.

The defendant has filed a motion to dismiss contending that the statute creates an impermissible classification based on sex in violation of the equal protection clause of the United States Constitution.

The evidence, as outlined in the briefs, is expected to indicate that John T. Brothers, Jr., age 27, had a date to take the fifteen-year old prosecutrix to the movies. The State alleges that the defendant instead took the prosecutrix to the bank of a canal where he forced her to engage in sexual intercourse.

It is provided in 11 Del.C. § 763 that "A male is guilty of rape in the second degree when he intentionally engages in sexual intercourse with a female without her consent." Another section, 11 Del.C. § 767, defines "without consent" as sexual intercourse, deviate sexual intercourse, or sexual contact when:

(1) The defendant compels the victim to submit by force or by threat of imminent death, serious physical injury, extreme pain, or kidnapping, to be inflicted upon anyone, or by any other threat which would compel a reasonable person under the circumstances to submit; or

\* \* \* \* \* \*

(3) The victim is less than 16 years old.

\* \* \* \* \* \*

Thus, the indictment may be read to charge that the victim was actually forced to submit or that the victim willingly engaged in sexual intercourse, but that she was legally incapable of consenting under the provisions of 11 Del.C. § 767(3) and that portion of § 763 which (through 11 Del.C. § 767(3)) makes it a crime to have sexual intercourse with a female under 16 (whether or not she was willing).

The defendant is not understood to contend that the statute, to the extent that it makes forced sexual intercourse a crime is unconstitutional. It is contended, however, that such portion of the statute which makes it illegal for a male to have sexual intercourse with a "consenting" female under 16 years old (but not for a female to have intercourse with a "consenting" male under 16 years old) amounts to an impermissible and unconstitutional classification based upon sex.

In support of his motion to dismiss, the defendant asserts that the phrase "without her consent" as used in the indictment must, of necessity, be construed as alleging only a violation of the age limitation contained in § 767(3). Since the definition of "without consent" in 11 Del.C. §§ 763, 767, includes force or threat, I see no reason to assume that the State by using "without consent" in its indictment meant to rely

solely on an alleged violation of the age of consent to establish the crime.

The indictment may properly be read to charge that the defendant forcibly raped the victim. If the defendant is found guilty of this crime, there is no constitutional question about the statute. However, it is apparent that the evidence may establish a consensual sexual intercourse which would be regarded as "without consent" only because the consenting female was less than 16 years old and, therefore, incapable of legal consent. This would bring into play the provision of 11 *Del.C.* § 767(3). In view of this possibility, the Court will decide the constitutional issue as though rape in the second degree as defined in 11 *Del.C.* § 763 and § 767(3) was the only crime here charged.

\*     \*     \*     \*     \*     \*

Statutory classifications that distinguish between males and females are subject to scrutiny under the equal protection clause. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397, reh. den., 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1976); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The degree of that scrutiny, however, has not been conclusively settled.

Under "traditional" equal protection analysis, a legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). In this analysis, the ordinary presumption of the constitutionality of the statute applies. *Justice v. Gatchell*, Del.Supr., 325 A.2d 97 (1974); *Mayor and Council of City of Dover v. Kelley*, Del.Supr., 327 A.2d 748 (1974).

The United States Supreme Court has recognized a category of "inherently suspect" classifications based upon race, alienage and national origin. This category is subject to close scrutiny and a heavy burden of justification. *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Frontiero v. Richardson*, supra. Placement in

this category bars the application of the presumption of constitutionality and requires the showing of a compelling state interest to justify the law. *M v. M*, Del. Supr., 321 A.2d 115 (1974).

In the case of *Frontiero v. Richardson*, supra, a plurality of the Supreme Court held that sex as a basis for classification was suspect, and thus, a heavy burden of justification was placed on classifications which are based on sexual characteristics. Subsequent decisions, however, have made it clear that legislative classifications based on sex are not to be viewed as inherently suspect. Instead, gender based legislation has been subject to a "middle ·tier" approach, which brings the legislative classification under a closer scrutiny than the traditional rational basis test but does not require the heavy jurisdiction of the suspect classification. *Craig v. Boren*, supra (Justice Brennan concurring): *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Vorchheimer v. School Dist. of Philadelphia*, 532 F.2d 880 (C.A. 3, 1976), aff'd. 430 U.S. 703, 97 S.Ct. 1671, 51 L.Ed.2d 750 (1977); *Davis v. Passman*, 544 F.2d 865 (C.A. 5, 1977).

■ I am convinced that whether the statute is viewed in the light of the rational relationship test or a closer look is taken under a "middle tier" approach, the statute in question clearly passes equal protection analysis.

■ While the equal protection clause prohibits arbitrary distinctions, it does not require blanket uniformity or exact equality in all areas of the law. *Norvell v. Illinois*, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, reh. den., 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99 (1963). The Fourteenth Amendment does not deny a state the power to treat different classes of people in different ways as long as the classification is reasonable. *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

In analyzing gender based legislation, the Supreme Court has rejected categories based on administrative convenience, *Frontiero v. Richardson*, supra; *Reed v. Reed*,

supra; "archaic and overbroad" generalizations, *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610, reh. den. 420 U.S. 966, 95 S.Ct. 1363, 43 L.Ed.2d 446 (1975); and outdated misconceptions concerning the role of females in the home rather than in the market place and world of ideas. *Stanton v. Stanton*, supra; *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, where the statutory classification is not the result of overbroad generalizations but instead reasonably furthers a state policy based on a valid distinction between the sexes, it will be upheld. *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

Among the reasons the State has cited in support of the statutory rape statute and its distinction between male and female, are the greater possibility of injury to a female victim, the possibility of pregnancy, and the physiological and sociological problems said to be more likely to be attendant upon a female victim than a male victim. An attempt to give extra protection to the female victim on account of these potential problems is a valid objective and the classification contained in the legislation appears to bear a fair and substantial relationship to the problems the statute is designed to meet.

It is not for the Court to decide whether this is the best possible legislation or whether the valid state interests would be better served by another form of legislation, *M v. M*, supra.

The legislature may reasonably have concluded that the possible harm from consensual sexual intercourse when engaged in by persons below the age of 16 falls much more heavily upon a female than a male. The legislature is free to recognize degrees of harm and to legislate where the need for severe punishment is deemed to be greatest. The law will not be overturned merely because there are other instances to which it could be made to apply. *West Coast Hotel Company v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 84 L.Ed. 703 (1937); *People v. Gould*, Colo.Super., 188 Colo. 113, 532 P.2d 953 (1975).

Rape and statutory rape statutes have come under equal protection attack in many jurisdictions in recent years. It is apparent that in almost every instance the distinctions made in the statutes have been upheld. See *Moore v. McKenzie*, W.Va.Supr., 236 S.E.2d 342 (1977); *In Re W.E.P.*, D.C. App., 318 A.2d 286 (1974); *Finley v. State*, Tex.Ct. of Crim.Appeals, 527 S.W.2d 553 (1975); *People v. Salinas*, Colo.Supr., 551 P.2d 703 (1976); *State v. Drake*, Iowa Supr., 219 N.W.2d 492 (1974); *In Re Interest of J.D.G.*, Mo.Supr., 498 S.W.2d 786 (1973); *State v. Ewald*, Wis.Super., 63 Wis.2d 165, 216 N.W.2d 213 (1974); *People v. Medrano*, Ill.App., 24 Ill.App.3d 429, 321 N.E.2d 97 (1974); *People v. Mackey*, Cal.Ct. of Appeals, 46 Cal.App.3d 755, 120 Cal.Rptr. 157 (1975), cert. den., 423 U.S. 951, 96 S.Ct. 372, 46 L.Ed.2d 287 (1975); *Brooks v. State*, Md.Ct. of Spec.Appeals, 24 Md.App. 34, 330 A.2d 670 (1975).

The only case found to support the defendant's contention is *Meloon v. Helgemoe*, 436 F.Supp. 528 (D.C.N.H.1977), aff'd. 564 F.2d 602 (C.A. 1, 1977). Therein, the United States District Court for the District of New Hampshire overturned the conviction of Thomas Meloon for the crime of statutory rape. The conviction had previously been affirmed by the New Hampshire Supreme Court. The finding of the District Court that the statute was unconstitutional because it violated the equal protection clause was affirmed by the Court of Appeals in the First Circuit.

It is apparent that the Court of Appeals, despite its protestations to the contrary, held New Hampshire to a very strict standard of proof to support its statutory rape statute. The possibility of pregnancy, the greater danger of physical injury and the sociological reasons advanced by the State of New Hampshire were not deemed to give sufficient support to justify the classifications found within the provisions of the statute.

In discussing the pregnancy rationale, the Court noted that the definition of rape required only "penetration, however slight" and that no emission was required. In com-

menting on this, the Court said ". . . we do not see how one could infer a pregnancy prevention rationale from a statutory scheme that included the above conditions." *Meloon v. Helgemoe*, Ibid, 564 F.2d at 607, n.6. It was almost as if the Court was requiring the legislature to build into its statutory scheme a definition of how far was too far and how much was enough. The Court also noted that New Hampshire had lowered the required age of the victim from 15 to 13 after the offense charged and thus weakened its position that pregnancy prevention was one of the objects of the statute. Delaware, on the other hand, has raised its statutory age from 12 to 16 since the current classification has been in effect and thus has included within the protection of the statute far more females of a child-bearing age. 61 *Del.L.*, Ch. 56 (effective May 23, 1977).

The Court also found no merit to the State's argument that the statutory rape statute was reasonably designed to prevent physical injury to the female. It saw little to differentiate the potential physical injury to young females from the "psychic trauma" which might be suffered by children in general. The Court again concentrated on the "penetration, however slight" definition to find that such a definition is inconsistent with the justification of the prevention of physical injury.

In my opinion, the Court in the *Meloon* case placed an undue burden on the State of New Hampshire to justify the long-standing classification of offenses found in many statutes defining statutory rape. It appears to have concluded that the reasons given by the State in support of its statute were really a subterfuge. In other respects, it required the legislature to build into the legislation a mathematical precision not practicable in a rape statute.

For the reasons previously stated, I hold that 11 *Del.C.* § 763 is not in violation of the equal protection clause of the State or Federal Constitutions, and I decline to follow *Meloon v. Helgemoe.*

The motion to dismiss is denied. IT IS SO ORDERED.