**STATE of Maine**

v.

**George RUNDLETT.**

Supreme Judicial Court of Maine.

Sept. 20, 1978.

David M. Cox, Dist. Atty., Margaret J. Kravchuk, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Vafiades, Brountas & Kominsky by Susan R. Kominsky (orally), Lewis V. Vafiades, Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The issue presented by this appeal is whether 17 M.R.S.A. § 3151 (1964), Maine's former "statutory rape" law,[1] violated the equal protection clauses of the constitutions of the United States (amend. XIV, § 1) and the State of Maine (art. I, § 6–A). Section 3151, now superseded by our new Criminal Code,[2] punished males for engaging in sexual intercourse with females under age 14, but did not similarly penalize females for engaging in sexual intercourse with males under age 14.[3]

In July 1977 a jury found defendant George Rundlett guilty on three out of four counts of statutory rape.[4] Defendant appeals from the judgment of conviction entered on the jury's verdict on the sole ground that the statutory rape law in effect at the time of his alleged offenses was unconstitutional.[5]

We deny the appeal.

The evidence warranted the jury's making the following findings of fact. The prosecutrix turned thirteen in December of 1975. The defendant taught at the junior high school attended by the prosecutrix and served as her homeroom teacher. One afternoon in October of 1975 the prosecutrix was visiting one of the defendant's daughters at defendant's home. When the defendant's daughter and other children left the house to buy ice cream, defendant invited the prosecutrix into his bedroom and over her protests[6] had sexual intercourse with her. During the following five or six

---

**1.** At the time of defendant's alleged offenses in the fall and winter, 1975–76, 17 M.R.S.A. § 3151 provided in full:

"*Whoever* ravishes and carnally knows any female who has attained her 14th birthday, by force and against her will, or *unlawfully and carnally knows and abuses a female child who has not attained her 14th birthday,* shall be punished by imprisonment for any term of years." (Emphasis added)

**2.** Section 252 of the Criminal Code, which, effective May 1, 1976, superseded and replaced 17 M.R.S.A. § 3151, provides, in pertinent part, that "A *person* is guilty of rape if he engages in sexual intercourse: A. With any *person,* not his spouse, who has not in fact attained his 14th birthday . . . ." (Emphasis added) 17–A M.R.S.A. § 252(1)(A) (Supp.1977).

**3.** It should be noted at the outset that females over the age of 21 who engaged in sexual relations with males under the age of 16 were subject to punishment (imprisonment for one to ten years) for the crime of indecent liberties under former 17 M.R.S.A. § 1951 (repealed effective May 1, 1976).

**4.** The Superior Court sentenced defendant to three years at Maine State Prison for each conviction, to run concurrently. Execution of sentence was stayed pending the outcome of this appeal.

**5.** Although defendant raises his equal protection argument for the first time on appeal, his attack goes to the constitutionality of the statute under which he was indicted and convicted and therefore to the very jurisdiction of the court. *State v. Porter,* Me., 384 A.2d 429, 433 (1978).

**6.** Whether the prosecutrix willingly participated in either the first or any subsequent act of sexual intercourse was irrelevant under section 3151, which made criminal without more

months, defendant arranged to meet the prosecutrix secretly on numerous occasions for the purpose of sexual intercourse. These liaisons ended in March of 1976, and a year later the prosecutrix's reporting of defendant's activities to school authorities led to his arrest and indictment for statutory rape.

Defendant asks this court to set aside his conviction on the ground that the statute under which he was convicted, 17 M.R.S.A. § 3151, denied him equal protection of the laws by unlawfully discriminating against him on the basis of sex. Section 3151 in a single sentence defined the crime of rape or "carnal knowledge" of females, both above and below the age of consent:

> "Whoever ravishes and carnally knows any female who has attained her 14th birthday, by force and against her will, or unlawfully and carnally knows and abuses a female child who has not attained her 14th birthday, shall be punished by imprisonment for any term of years."

Although the word "whoever" is facially a "gender-neutral" term, this court has defined carnal knowledge as "penetration of the female sex organ by the male sex organ." [7] *State v. Bernatchez,* 159 Me. 384, 385, 193 A.2d 436, 437 (1963); see also *Wilson v. State,* Me., 268 A.2d 484, 487 (1970). Furthermore, since the statute expressly designates as possible victims of the crime only *females* under age 14, only *males* were directly subject to the statute's proscription.[8] In short, section 3151 created a classification based on sex. It neither protected males under 14 nor punished females for engaging in sexual intercourse with males below that age.

Of course, sex-based classifications are not *per se* unlawful. State legislatures have generally enjoyed "the power to treat different classes of persons in different ways," *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971),[9] unless the legislative classification "is 'patently arbitrary' and bears no *rational relationship* to a *legitimate* governmental interest." (Emphasis added) *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973). The degree of "legitimacy" or importance of the stated goals and the closeness of the "relationship" between the classification and those goals which are required to pass equal protection muster, have varied with the subject matter of the classification. Thus, the United States Supreme Court has subjected statutes which discriminate on the basis of race to the "most rigid scrutiny," *Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), while in evaluating a system of financing education which arguably discriminated on the basis of wealth, the Court required only that the "system be shown to bear some rational relationship to legitimate state purposes." *San Antonio School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

The degree of scrutiny the United States Supreme Court would have us apply in examining sex-based classifications is still unclear. Although a majority of the Court has yet to add sex to the list of

---

the act of sexual intercourse with a female under the age of 14, whether or not she consented.

7. Thus, the act punished by section 3151 was by definition a heterosexual act. The crime defined by section 3151 did not encompass any of numerous other acts which are sometimes loosely referred to as "rape," but which involve participants of the same sex, or else, while involving opposite sexes, are performed in some unnatural manner. *See, e. g., State v. White,* Me., 217 A.2d 212 (1966) [conviction for anal intercourse in violation of former 17 M.R.S.A. § 1001 (repealed effective May 1, 1976) prohibiting "crimes against nature"].

8. However, as this court noted in upholding the conviction of a male who forcibly restrained a woman while two cohorts engaged in sexual intercourse with her, *State v. Flaherty,* 128 Me. 141, 146 A. 7 (1929), a woman may be convicted of rape as an aider and abettor:

> "It is now a well-settled rule of law that rape is a felony and that all persons who are present, aiding, abetting, and assisting a man to commit the offense, whether men or women, are principals and may be indicted as such." 128 Me. at 145, 146 A. at 9.

9. See also *Wark v. Robbins,* 458 F.2d 1295 (1st Cir. 1972) (upholding a statute which imposed a heavier penalty on male escapees from Maine State Prison than on female escapees from a different penal institution).

suspect classifications requiring strict scrutiny,[10] recent cases addressing this question confirm Justice Powell's observation that "the relatively deferential 'rational basis' standard of review normally applied takes on a sharper focus when we address a gender-based classification." *Craig v. Boren,* 429 U.S. 190, 211 n. *, 97 S.Ct. 451, 464, 50 L.Ed.2d 397 (1977) (Powell, J., concurring).[11] *Craig v. Boren,* in which the Supreme Court invalidated an Oklahoma statute that prohibited the sale of beer to males, but not females, in the 18–21 age group, exemplifies the "middle tier" approach. "To withstand constitutional challenge," the Court wrote, "classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." *Id.* at 197, 97 S.Ct. at 457.

Using the standard set forth in *Craig v. Boren* as a guide to the degree of scrutiny required, the question becomes whether the sex-based classification in Maine's former statutory rape law served "an important governmental objective" and was "substantially related" to the achievement of that objective. We find that it plainly met that test.[12]

A statute emerging from the democratic process inevitably reflects a constellation of interests, aims, and concerns. Identifying the legislature's purposes can become even

---

**10.** In striking down a statute which discriminated between male and female spouses of members of the armed forces in *Frontiero v. Richardson, supra,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), Justices Brennan, Douglas, White, and Marshall concluded that sex-based classifications are "inherently suspect and must therefore be subjected to close judicial scrutiny." *Id.* at 682, 93 S.Ct. at 1768. However, Chief Justice Burger and Justices Blackmun and Powell expressly withheld judgment on the proper degree of scrutiny to be applied. Justice Rehnquist dissented, and Justice Stewart concurred on grounds that the statute worked "an invidious discrimination in violation of the Constitution." *Id.* at 691, 93 S.Ct. at 1773. In two more recent decisions, *Craig v. Boren, supra,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), Justice Brennan, writing for a majority of the Court, has stated a lower standard, requiring only that such classifications "serve important governmental objectives and must be substantially related to the achievement of those objectives." *Craig v. Boren,* 429 U.S. at 197, 97 S.Ct. at 457; *Califano v. Goldfarb,* 430 U.S. at 210–11, 97 S.Ct. 1021.

**11.** See *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (invalidating Social Security Act provision which granted survivor benefits to a deceased male's wife or minor children but withheld benefits from the surviving husband of a deceased female); *Craig v. Boren, supra; Califano v. Goldfarb, supra* (invalidating Social Security Act provision which granted survivor benefits to the widows of deceased males regardless of dependency but extended such benefits to the surviving widowers of deceased females only upon proof of dependency). *See generally* Lehmann and Elkund, "Constitutional Review: Su-

preme Court, 1977–78 Term," 5 *Hastings Const.L.Q.* 61, 63–92 (1978).

**12.** In approaching this question, we are aware of the First Circuit's recent decision in *Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). In *Meloon,* the First Circuit held that the New Hampshire statutory rape law which punished "only male perpetrators" and protected "only female victims of the crime" violated the equal protection clause. *Id.* at 603. However, the First Circuit expressly limited its holding in *Meloon* to the New Hampshire statute under consideration:

"We want to take care to indicate the limited nature of our holding. We have found only one particular statutory rape law to be unconstitutional. We have not reflected on nor do we intend to question the constitutionality of the laws of other states. We express no opinion as to whether on a different record some other statute would pass constitutional scrutiny." *Id.* at 609.

Although this court is not directly bound by the First Circuit's decision, this court continues to adhere to an express policy that "in the interests of developing harmonious federal-state relationships" it is wise "that a state court of last resort accept, *so far as reasonably possible,* a decision on a federal constitutional issue rendered by a United States Court of Appeals in the Circuit in which the State is situated." (Emphasis added) *State v. Lafferty,* Me., 309 A.2d 647, 667 (1973) (Wernick, J., concurring). See also *State v. Knowles,* Me., 371 A.2d 624, 627–28 (1977). Since the history, language, and legislative scheme of Maine's statutory rape law are clearly distinguishable from the statute invalidated in *Meloon,* no conflict arises between this express policy and this court's evaluation of the defendant's equal protection claim.

more difficult when examining a law which, as Maine's former statutory rape provision, stemmed from a statute enacted nearly seven centuries ago. However, the history of our Maine statute does strongly suggest that the lawmakers were motivated by at least two major concerns firmly rooted in the distinctive physiology of young females: their vulnerability to pregnancy and to special physical injury resulting from sexual intercourse.

Youngsters of either sex may experience psychological trauma resulting from sexual intercourse with an adult. But only young females can become pregnant. Furthermore, young females, unlike males, are exclusively and uniquely vulnerable to physical injury caused by the penetration of the adult male sex organ into the vagina.[13]

The lawmakers' continuing concern with protecting young females from pregnancy and physical injury emerges from an examination of the lengthy history of the statute. Section 3151 had its source "in statutory provisions of the mother Commonwealth of Massachusetts in force long before and at the time of the separation. . . . The statutes in existence at the time of the separation in all essentials were re-enacted in this State in Laws of Maine 1821 . . ." *Moody v. Lovell,* 145 Me. 328, 332, 75 A.2d 795, 797 (1950).[14] In passing its first statutory rape law in October 1669, the Massachusetts legislators expressly stated that the law was necessitated by the fact that "carnal copulation with a woman childe, under the age of ten years, is . . . perrilous to the life and well-being of the childe . . . ." Mass.Colony Laws 15 (1672) [cited in *Commonwealth v. Roosnell,* 143 Mass. 32, 38, 8 N.E. 747, 750 (1886)].[15] In short, the special vulnerability of female children to physical injury from sexual intercourse motivated the legislature to extend special protection to that female class. That purpose was carried forward by statutory rape provisions subsequently enacted in Massachusetts until 1821 and in turn by the verbatim Maine provision that survived separation.[16]

After separation, Maine followed Massachusetts closely in modifying its statutory

---

**13.** In a study of rape victims, Woodling, Evans, and Bradbury observed that while older females rarely suffer injury to the genitals, young female victims are particularly vulnerable to such injury:

"Genital injuries are quite common when coitus occurs among molestation victims or young adolescent females. These injuries are most frequently minor and include abrasions, hymenal transections, first-degree vaginal tears, and perianal tears. These injuries are almost always painful but are rarely associated with significant bleeding." Woodling, Evans and Bradbury, "Sexual Assault: Rape and Molestation," 20(3) *Clin.Obstet. Gynecol.* 509, 516 (1977).

**14.** In turn, the Massachusetts statutory rape provision traces its lineage to the Statute Westminster I, 1275, 3 Edw. I, which prohibited the ravishment of "any maiden within Age (Neither by her Consent, nor without)" and set the "within age" [*i. e.,* the statutory age of consent] at 12. 4 *Blackstone Commentaries* 212 (Sharswood 1860). Three centuries later, Parliament lowered the statutory age of consent to 10 and stated the offense in language still reflected in the statute now under consideration:

"And for plain declaration of law, be it enacted, That if any person shall unlawfully and carnally know and abuse any woman-child under the age of ten years, every such unlawful and carnal knowledge shall be felo-

ny, and the offender thereof being duly convicted shall suffer as a felon without allowance of clergy." 1576, 18 Eliz., ch. 7.

**15.** The statute enacted in October 1669, Mass. Colony Laws 15 (1672), cited in *Commonwealth v. Roosnell,* 143 Mass. 32, 38, 8 N.E. 747, 750 (1886), stated in full:

"Forasmuch as carnal copulation with a woman childe, under the age of ten years, is a more hainous sin than with one of more years, as being more inhumane and unnatural in itself, and more perrilous to the life and well-being of the childe: it is therefore ordered by this Court, and the authority thereof, that whosoever he be shall commit or have carnal copulation with any such childe under ten years old, and be legally convicted thereof, he shall be put to death."

**16.** In *Meloon v. Helgemoe,* n. 12 above, the First Circuit considered and rejected the State of New Hampshire's argument that its statutory rape law was designed to protect young women from physical damage resulting from sexual intercourse. However, in dismissing the state's argument the First Circuit observed that "the state has given us no sense of how common an occurrence this form of injury is . . ." (*id.* at 608) and concluded:

"Given this lack of precision we are hard put to accept as 'fair and substantial' the connec-

rape law. In 1886, Massachusetts raised the statutory age of consent from 10 to 13. 1886 Mass.Acts 270, ch. 305 (approved June 21, 1886). Barely nine months later Maine followed suit. P.L. 1887, ch. 127, §§ 1, 2 (approved March 16, 1887). In 1888, Massachusetts again raised the statutory age from 13 to 14. 1888 Mass.Acts 401, ch. 391 (approved May 23, 1888). And again, within nine months, Maine enacted the same increase. P.L. 1889, ch. 180, §§ 1, 2 (approved February 14, 1889). In 1893, Massachusetts set the statutory age at 16 (1893 Mass.Acts 1381, ch. 466), this time without provoking a similar change in Maine, and during the next seven decades the statutory rape laws in both states remained without any further change that is here relevant.

The objective of the Maine and Massachusetts lawmaking bodies to prevent pregnancy in young females through their statutory rape laws is manifested by the refusal of both states to follow the lead of other jurisdictions in making the prior chastity of the prosecutrix an element of the offense.[17] Cf., e. g., Fla.Stat.Ann. § 794.05 (West) (1976); 1 Wharton's Criminal Law § 318 (R. Anderson ed. 1957). The chastity qualifier undoubtedly reflected a belief that once a female below the age of consent lost her virginity, she had nothing more to lose. The rejection of the qualifier by the Maine and Massachusetts lawmakers suggests that the legislators were more concerned with preventing pregnancy than preserving chastity.[18]

tion between (1) the fact that one subclass of one gender class of victims has some indeterminate likelihood of suffering an additional injury to which the other gender class is not susceptible and (2) the state's statutory scheme which penalizes only one gender exclusively and protects the other gender exclusively." Id. at 608.

As shown in n. 13 above there is evidence that young females are particularly vulnerable to physical injury resulting from sexual intercourse. Even if we indulge the probably doubtful assumption that the class of male children who appear attractive to adult females for sexual intercourse is as large as the class of female children who are attractive for that purpose to adult males, the physical difference between the external sex organ of the young male and the internal sex organ of the young female results in the young female's having a significantly greater risk of physical injury.

Further, it should be noted that New Hampshire failed to show that the legislature at the time of enactment actually considered the rationale advanced in latter-day defense of the statute. In the instant case, as the Mass. Colony Laws of 1672 reveal, n. 15 above, protecting the "life and well-being" of young females was expressly declared as a principal reason motivating the legislation from which the Maine statute currently under consideration directly derives.

17. Although less prevalent in modern statutes, prior chastity was an element of the offense in a large number of jurisdictions in the late 19th century at the time Maine and Massachusetts raised the age of consent above ten years. E. g., Act No. 143, Mich.Laws of 1887, cited in People v. Mills, 94 Mich. 630, 631, 54 N.W. 488 (1893), provided:

"Any male person of the age of sixteen years or more who shall carnally know any girl, theretofore chaste, of the age of fourteen years, and not more than sixteen years of age, with the consent of such girl, shall, upon conviction thereof, be punished by imprisonment . . . ." (Emphasis added)

Similarly, the former statutory rape law in Oklahoma employed the chastity qualifier:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: First. Where the female is under the age of 16 years, of previous chaste and virtuous character." (Emphasis added). 1895 Okl.Sess.Laws 104, cited in Young v. Territory, 8 Okl., 525, 526, 58 P. 724 (1899).

The Massachusetts legislature expressly considered and rejected a proposal to incorporate the chastity qualifier in the Massachusetts statutory rape law. In the 1893 session of the Massachusetts House of Representatives, Mr. Bliss of Boston introduced the following amendment to the statutory rape law:

"Sect. 3. Whoever induces any person under the age of sixteen years of chaste life and conversation to have unlawful sexual intercourse shall be punished by imprisonment in the common jail or house of correction not exceeding one year or by fine not exceeding one thousand dollars . . . ." 1893 Journal of the House of Representatives of the Commonwealth of Massachusetts 568. (Emphasis added)

The Massachusetts House rejected the amendment. Id. at 625.

18. Although the State of New Hampshire in Meloon v. Helgemoe, n. 12 above, argued that a principal purpose underlying its statute was the prevention of pregnancy, the First Circuit

The Maine legislature was not alone in recognizing the need to extend special protection to young females. Comparable statutes have long been almost universal. See 1 *Wharton's Criminal Law, supra* at § 315. Statutory rape laws have been challenged on equal protection grounds in a number of jurisdictions and have been upheld in every case, with one single exception.[19] As the Fourth Circuit Court of Appeals observed in upholding West Virginia's statutory rape law against an equal protection challenge, *Hall v. McKenzie,* 537 F.2d 1232 (4th Cir. 1976), the "rational basis" for punishing only male perpetrators and protecting only female victims lies in "immutable physiological" differences:

> "[B]eing the subject of carnal knowledge for a female of thirteen is not the same as being the subject of carnal knowledge for a male of thirteen. For immutable physiological reasons, the possible consequences for the young female are quite different from those for the young male, and the differences provide a persuasive rationale for defining the respective crimes of carnal knowledge of a male and female separately and making different the consequences of conviction. Even if we assume that the potential psychological damage arising from carnal knowledge of a male of thirteen is as great as that arising from carnal knowledge of a female of thirteen, it is obvious that there is a far greater likelihood of physical injury to a sexually immature female of thirteen than to a sexually immature male of thirteen. More important, a possible consequence of carnal knowledge of a thirteen-year-old female may be to cause her to become pregnant—a physio-

noted that "New Hampshire presents us with not an iota of testimony or evidence that the prevention of pregnancy was a purpose of its statutory rape law" (*id.* at 607), and warned against using the pregnancy rationale as "an available hindsight catchall rationalization for laws that were promulgated with totally different purposes in mind." *Ibid.* The express consideration and rejection of the chastity qualifier by Maine and the mother commonwealth shows that preventing pregnancy in young females was a prime purpose of the legislators.

Moreover, in striking down the New Hampshire statute the First Circuit observed that wild fluctuations in New Hampshire's statutory age of consent belied the purported pregnancy rationale:

> "[T]he state admits that over the last 100 years the age which defines the defense has varied from ten to thirteen to sixteen to fifteen and finally back to thirteen. Without some concrete indication from the state as to the reasons behind these changes we cannot believe that such disregard for whether or not some or any of the class of females protected are of child bearing age is reconcilable with a pregnancy prevention rationale." *Ibid.*

As shown above, the Maine statute underwent no such fluctuation. The age of consent was raised steadily upward from 10 to 13 in 1887 and from 13 to 14 in 1889.

The First Circuit also found in *Meloon* (*id.* at 607 n. 6) that the absence of a requirement of emission, and the failure to recognize the use of contraceptives as a defense to the charge, contradicted the assertion that the New Hampshire statute was targeted at juvenile pregnancies.

We do not find any contradiction. We doubt that legislators, intent on use of the criminal law to prevent juvenile pregnancies, would throw such a roadblock in the way of effective prosecution as would be created by subjecting an under-age prosecutrix to cross-examination on such additionally embarrassing and uncertain details. Furthermore, we believe legislators' rejection of the defenses suggested by *Meloon* would more likely reflect their reluctance to rely, for accomplishment of their anti-pregnancy objective, upon the doubtful efficacy of contraceptives and the truth of the inevitable claim of nonemission by a male charged with statutory rape.

**19.** The exception is *Meloon v. Helgemoe,* n. 12 above. For two subsequent cases holding that a sex-based classification in a statutory rape law does not violate equal protection, see *State v. Brothers,* Del.Super., 384 A.2d 402 (1978), and *People v. McKellar,* 23 Crim.L.Rep. 2456 (Calif.Ct.App., 2d Dist., June 26, 1978).

Other jurisdictions have upheld statutory rape laws in *People v. Salinas,* Colo., 551 P.2d 703 (1976); *In Re W.E.P.,* D.C.App., 318 A.2d 286 (1974); *State v. Drake,* Iowa, 219 N.W.2d 492 (1974); and *Moore v. McKenzie,* W.Va., 236 S.E.2d 342 (1977).

Rape laws have similarly withstood equal protection attack in *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974); *People v. Medrano,* 24 Ill.App.3d 429, 321 N.E.2d 97 (1974); *Brooks v. State,* 24 Md.App. 334, 330 A.2d 670 (1975); *Finley v. State,* Tex.Cr.App., 527 S.W.2d 553 (1975); and *State v. Ewald,* 63 Wis.2d 165, 216 N.W.2d 213 (1974).

logical impossibility for a male." *Id.* at 1235.[20]

Given the legislature's articulated objectives underlying Maine's former statutory rape law, we harbor no doubt whatever that its sex-based classification serves "important governmental objectives" and is "substantially related to the achievement of those objectives." *Craig v. Boren, supra,* 429 U.S. at 197, 97 S.Ct. at 457. Certainly, protecting young females from pregnancy and physical injury is an important legislative objective. And a law which punishes males for having sexual intercourse with females below the age of consent is substantially related to that objective. Unlike the sex-based classifications in the distribution of public goods invalidated in *Weinberger v. Wiesenfeld, supra,* and *Califano v. Goldfarb, supra,* which reflected " 'archaic and overbroad' generalizations . . . or 'old notions' . . . such as 'assumptions as to dependency' [of females]" (*id.* 430 U.S. at 207, 97 S.Ct. at 1026), the different treatment of males and females by Maine's statutory rape law is dictated not by social convention but by immutable physiological facts: young females are uniquely and exclusively susceptible to pregnancy and to physical damage resulting from sexual intercourse.

Accordingly, 17 M.R.S.A. § 3151 survives the scrutiny applied to sex-based classifications under the equal protection clause of either the federal or Maine Constitution. The entry must be:

Appeal denied.

Judgment affirmed.

---

**20.** Similarly, in upholding Delaware's statutory rape law, *State v. Brothers, supra,* the Superior Court of Delaware recently concluded:

"Among the reasons the State has cited in support of the statutory rape statute and its distinction between male and female, are the greater possibility of injury to a female victim, the possibility of pregnancy, and the physiological and sociological problems said to be more likely to be attendant upon a female victim than a male victim. An attempt to give extra protection to the female victim on account of these potential problems is a valid objective and the classification contained in the legislation appears to bear a fair and substantial relationship to the problems the statute is designed to meet." *Id.* at 405.