STATE

v.

**William J. WARE.**

No. 78–356–C.A.

Supreme Court of Rhode Island.

July 24, 1980.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, App. Division, for plaintiff.

Thomas J. Grady, Pawtucket, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, William J. Ware, by information was charged with unlawful carnal knowledge and abuse of a girl under the age of sixteen in violation of G.L. 1956 (1969 Reenactment) § 11–37–2. The grand jury further indicted him in three counts with violations of § 11–26–1 (kidnapping), § 11–37–1 (rape), and § 11–37–3 (attempted carnal knowledge of a girl under the age of sixteen). Prior to submitting the case to the jury, the trial justice granted defendant's motions for judgments of acquittal on the kidnapping and attempted-carnal-knowledge counts of the indictment. The jury, after due deliberation, returned a verdict of not guilty of the rape charge and a verdict of guilty of the charge of carnal knowledge of a female under the age of sixteen years. A judgment of conviction was entered, and the defendant was sentenced to five years, three years to serve and two years suspended. The defendant has appealed to this court from the judgment of conviction.

The pertinent facts briefly stated are as follows. The complaining witness, Darlene T. McLaren, testified that on the day of the alleged incident defendant had taken her, with the permission of her mother, to buy greeting cards. Prior to returning home, she said, defendant had driven her to his apartment. Darlene described how, after a brief interval, defendant pulled her into the bedroom, pushed her down on a bed, and had sexual intercourse with her. According to Darlene's testimony, they thereafter returned to the home of defendant's sister where defendant remained for a short period of time and then left. It further appears from the record that later, Darlene related the incident to her mother who thereupon took Darlene to Memorial Hospital for examination and reported the incident to the Pawtucket police.

The defendant testified in denial of the charge that he had had sexual intercourse with the complaining witness. He admitted, however, that he had "sat alongside of her" on the bed and "started fondling with [sic] her." In fact he recalled that he had fondled her on many prior occasions, but he denied ever having had sexual intercourse with her.

The issues that defendant raises in this appeal are two-fold. Ware complains that the trial justice abused his discretion in considering a presentence report that contained statements and opinions of the victim's mother describing the victim's present physical and mental condition. The defendant also contends that the statute under which he was convicted, § 11-37-2, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## I

■ The defendant claims that the trial justice should not have considered the portion of the presentence report which included the hearsay statements of the victim's mother. By relying on that information in imposing sentence, the trial justice, defendant claims, violated Super.R.Crim.P. 32(c)(2), relied on materially false information, and denied him the due process and Sixth Amendment right to confront an adverse witness and cross-examine her about the conclusions ascribed to her and contained in the report.

To the contrary, the state argues that defendant is not properly before the court because his contention, which amounts to a claim that the sentence was illegally determined and imposed, should have been addressed in the first instance to the Superior Court pursuant to Super.R.Crim.P. 35.[1]

We agree with the state that defendant's appeal constitutes a challenge of the sentence as illegally determined and imposed. *State v. Tessier*, 115 R.I. 372, 373, 346 A.2d 121, 122 (1975). In view of our holding in *State v. Tessier, supra*, where we stated that the proper procedure for attacking an illegal sentence is not to appeal directly to this court but to seek revision of the sentence initially in Superior Court under Rule 35, we conclude that this issue is not properly before us. *Id.* at 374, 346 A.2d at 122–23.

## II

In his appeal, Ware also claims that the statute under which he was convicted, § 11-37-2, is unconstitutional, on its face and as applied to his trial, as violative of the Fourteenth Amendment's guarantee of equal protection of law. At the time of defendant's trial § 11-37-2 provided:

1. Rule 35 of Super.R.Crim.P. provides:
   "Correction or reduction of sentence.—The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon

affirmance of the judgment or dismissal of the appeal, or within one hundred twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari. The court may reduce a sentence, the execution of which has been suspended, upon revocation of probation."

"Carnal knowledge of a girl under age of consent—Whoever shall unlawfully and carnally know and abuse any girl under the age of sixteen (16) years shall be imprisoned not exceeding fifteen (15) years."[2]

Undoubtedly § 11–37–2 creates a classification based on sex and is therefore discriminatory. The statute expressly designates females under the age of sixteen as the only possible victims of the crimes; moreover, since Rhode Island law adopts the commonlaw definition of "carnal knowledge"—penetration of the female sex organ by the male sex organ—only males are subject to the statute's proscription. *See Michael M. v. Superior Court*, 25 Cal.3d 608, 611, 601 P.2d 572, 574, 159 Cal.Rptr. 340, 342 (1979), *cert. granted*, —— U.S. ——, 100 S.Ct. 2984, 64 L.Ed.2d 853 (1980). Furthermore, the statute does not protect males under the age of sixteen. *See State v. Rundlett*, 391 A.2d 815, 817 (Me.1978).

■ A sex-based classification is not per se unconstitutional, although it is subject to judicial scrutiny under the Equal Protection Clause. *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225, 229 (1971). The Legislature has the power to treat different classes of persons in different ways; however, a statute may not establish different treatment of persons classified "on the basis of criteria wholly unrelated to the objective of that statute." *Id.* at 76, 92 S.Ct. at 254, 30 L.Ed.2d at 229.

■ Although the Supreme Court has not heretofore considered the constitutionality of a statute similar to § 11–37–2,[3] our sister jurisdictions have applied the standard found in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), to appeals involving identical attacks on statutes similar to the one before us. *See, e. g., Rundlett v. Oliver*, 607 F.2d 495, 498 (1st Cir. 1979); *State v. Bell*, 377 So.2d 303, 306 (La.1979); *State v. Rundlett*, 391 A.2d at 818. Under *Craig v. Boren*, "[t]o withstand constitutional challenge, * * * classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457, 50 L.Ed.2d at 407. Thus, the question before us is whether the sex-based classification in our former carnal-knowledge statute served an important governmental interest and was substantially related to achievement of those goals.[4]

In support of his challenge to the constitutionality of § 11–37–2, defendant urges that we follow the opinion of the First Circuit in *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). There the First Circuit struck down the New Hampshire carnal-knowledge statute as violative of equal protection. *Id.* at 609.

Thereafter, in an appeal attacking the constitutionality of the Maine carnal-knowledge statute, which, like the New Hampshire law, established a sex-based classifica-

2. Public Laws 1979, ch. 302, § 2 replaced the statute in question with a general-neutral statute.

3. The United States Supreme Court has held that legislation establishing a classification based on race is inherently suspect and, therefore, subject to strict judicial scrutiny. *E. g., Brown v. Bd. of Educ.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). On the other hand, the Court has applied a "mere rationality" test to legislation that does not involve a suspect class but merely regulates a legitimate state economic interest. *E. g., City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

4. The defendant complains that the trial justice at trial improperly placed upon him the burden of proving that § 11–37–2 was unconstitutional instead of saddling the state with the burden of establishing its constitutionality. For gender-based classifications attacked as violative of equal protection of law, the Supreme Court has required the state to establish the important governmental function to be served and the substantial relationship that the statute bears to its achievement. *See Craig v. Boren*, 429 U.S. 190, 200, 97 S.Ct. 451, 50 L.Ed.2d 397, 408 (1976); *accord, Orr v. Orr*, 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 319 (1979). Notwithstanding the trial court's error, we need not remand the case for a hearing on this issue of law since both the state and defendant have fully briefed and argued this issue before us.

tion, the First Circuit Court of Appeals upheld the constitutionality of the statute. *Rundlett v. Oliver,* 607 F.2d 495 (1st Cir. 1979). The divided court sustained the constitutionality of the Maine gender-based classification on the basis of an argument that it had rejected as unsupported in *Meloon v. Helgemoe, supra,* that there was a substantial relationship between the statutory classification and the achievement of the government objective of preventing physical injury peculiar to females under the age of consent, fourteen years old in Maine, *who engage in sexual intercourse. Rundlett v. Oliver,* 607 F.2d at 502.

Although we accord federal constitutional decisions of the federal circuit courts great deference and precedential value, we are not, of course, bound to follow them. *See Marran v. Gorman,* 116 R.I. 650, 653 n. 4, 359 A.2d 694, 696 n. 4 (1976). In this instance we believe that the later opinion of the First Circuit, *Rundlett v. Oliver, supra,* is more persuasive than the earlier opinion in *Meloon v. Helgemoe, supra.* In contrast to the First Circuit's approach, however, we shall treat statistical evidence and legislative history as instructive [5] and focus primarily on ascertaining whether a substantial relationship exists between the sex-based classification of § 11–37–2 and a compelling governmental objective.

We conclude that the classification before us bears a substantial relationship to the achievement of several important state objectives. It can be inferred from a consideration of the effects of the statutory classification that the statute is designed to subserve the state interest of protecting female children from the severe physical and psychological consequences of engaging in coitus before attaining the age of consent in the statute. It is widely recognized that there is a greater possibility that young females may suffer physical damages as a result of their engaging in sexual inter-

course at so young an age. *See, e. g., State v. Bell,* 377 So.2d 303, 306 (La.1979); *State v. Rundlett,* 391 A.2d at 819 n. 13. The anatomy of a young female, unlike that of a male of like years, in uniquely vulnerable to physical injury caused when the male sex organ penetrates into the vagina. Moreover, we believe that the classification seeks to prevent pregnancy in young females, a consequence of the act forbidden that the female alone must physically bear.

Beyond these distinctive physical perils there looms the possibility of the severe and lasting psychological trauma that a female of tender years might sustain. Although it is not entirely clear whether young females suffer psychological damage of a substantially different degree or character from that of their male counterparts, this danger, at the least, is an ancillary consideration in justification of the statutory classification. *See, e. g., Michael M. v. Superior Court,* 25 Cal.3d at 612, 601 P.2d at 575, 159 Cal.Rptr. at 643.

A review of the legislative history of the act and of the available statistical data, moreover, adds support to our identification of the important governmental objectives and our conclusion that the statute effectuates those purposes. We have traced the lineage of the statute under review to 1889 when the legislature enacted P.L. 1889, ch. 738, entitled,

"AN ACT FOR THE BETTER PROTECTION OF THE PERSONS OF WOMEN AND GIRLS AND IN AMENDMENT OF AND IN ADDITION TO CHAPTER 240 OF THE PUBLIC STATUTES 'OF OFFENSES AGAINST THE PERSON' AND OF CHAPTER 244 OF THE PUBLIC STATUTES 'OF OFFENSES AGAINST CHASTITY, MORALITY AND DECENCY.'"

Section 1 of the act reads,

"Whoever shall unlawfully and carnally know and abuse any girl under the age of

---

5. Former Chief Justice Warren is preeminent among the constitutional scholars who have counseled against the rendering of judicial decisions solely on the basis of what has been called "motivation analysis." *See United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673,

20 L.Ed.2d 672 (1968); *Rundlett v. Oliver,* 607 F.2d 495, 503–04 (1st Cir. 1979) (Campbell, J., concurring); Miller, *If "The Devil Himself Knows Not the Mind of Man," How Possibly Can Judges Know the Motivation of Legislators?* 15 San Diego L.Rev. 1167 (1978).

fourteen years shall be imprisoned for not less than ten nor more than twenty years."

Through subsequent reenactment of the statute in 1896, 1909, 1923, 1938, and 1956, the title of the act and the language of the section did not substantially change. In 1896, the Legislature raised the age of consent from fourteen years of age to sixteen years of age. We believe that in reading the titles of the various enactments together with the body of the statutes and in considering the obvious effect of the resulting classifications, a clear legislative intent to protect young females from all of the consequences attending sexual activity at a tender age emerges. Additionally, a plethora of scientific evidence confirms the logic of seeking to protect young females from dangers to which they alone are exposed.[6]

Having determined that compelling governmental objectives exist to justify the establishment of a class based on sex, it is a simple matter to determine whether a statute that punishes only males who engage in this conduct, which is harmful to female children, effectuates these objectives. Only males are capable of inflicting the injury that the statute was enacted to prevent. It is within the power of the Legislature, therefore, to subject only those who may physiologically commit the proscribed act to punishment. *See Michael M. v. Superior Court,* 25 Cal.3d at 612, 601 P.2d at 575, 159 Cal.Rptr. at 643.

In sum we note one further fact that we consider to be of immense precedential value. The overwhelming majority of courts that have considered challenges on equal-protection grounds to statutory-rape laws similar to the Rhode Island law under review have upheld the statutes as consistent with the Equal Protection Clause. *See Rundlett v. Oliver,* 607 F.2d 495 (1st Cir. 1979); *Hall v. McKenzie,* 537 F.2d 1232 (4th Cir. 1976); *State v. Gray,* 122 Ariz. 445, 595 P.2d 990 (1979); *Michael M. v. Superior Court,* 25 Cal.3d 608, 601 P.2d 572, 159 Cal. Rptr. 340 (1979), *cert. granted,* —— U.S.

——, 100 S.Ct. 2984, 64 L.Ed.2d 853 (1980); *People v. Salinas,* 191 Colo. 171, 551 P.2d 703 (1976); *State v. Brothers,* 384 A.2d 402 (Del.Super.1978); *In re W.E.P.,* 318 A.2d 286 (D.C.App.1974); *Lamar v. State,* 243 Ga. 401, 254 S.E.2d 353, *appeal dismissed,* 444 U.S. 803, 100 S.Ct. 23, 62 L.Ed.2d 16 (1979); *State v. Drake,* 219 N.W.2d 492 (Iowa 1974); *State v. Bell,* 377 So.2d 303 (La.1979); *State v. Rundlett,* 391 A.2d 815 (Me.1978); *In re J.D.G.,* 498 S.W.2d 786 (Mo.1973); *State v. Thompson,* 162 N.J.Super. 302, 392 A.2d 678 (1978); *State v. Elmore,* 24 Or.App. 651, 546 P.2d 1117 (1976); *Ex parte Groves,* 571 S.W.2d 888 (Tex.Cr.App.1978); *Moore v. McKenzie,* W.Va., 236 S.E.2d 342 (1977); *Flores v. State,* 69 Wis.2d 509, 230 N.W.2d 637 (1975). *But see Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir. 1977), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); *Tatro v. State,* 372 So.2d 283 (Miss. 1979).

For the reasons outlined above, we conclude that § 11–37–2 does not violate the Equal Protection Clause.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

DORIS, J., did not participate.

---

**6.** *See, e. g.,* Woodling, Evans & Bradbury, *Sexual Assault: Rape and Molestation,* 20(3) Clin. Obstet.Gynecol. 509, 516 (1977); Comment, *Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard,* 62 Yale L.J. 55, 76–77 (1952); 24 S.D.L.Rev. 523, 528 (1979).