STATE OF MAINE
*vs.*
JOSEPH CROTEAU

Cumberland.   Opinion, October 18, 1962.

*Arthur Chapman, Jr., County Attorney,*
for the Appellee (State).

*Henry Steinfeld,*

*Robert A. Wilson,* for the Appellant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J. Respondent had been indicted and thereby accused of the crime of rape of a female of 19 years of age. R. S., c. 130, § 10. He was tried by jury and the verdict was guilty. He filed a motion for a new trial, asserting that the verdict was against the law, against the evidence and manifestly against the weight of the evidence. The motion was denied and he appeals such ruling.

R. S., c. 130, § 10 pertinently is as follows:

"Who ever ravishes and carnally knows any female of 14 or more years of age, by force and against her will, - - - - shall be punished by imprisonment for any term of years."

To prevail in this case the respondent must demonstrate that upon the evidence the verdict was not justified.

"On appeals from the denial of a motion for a new trial in felony cases, - - - - the single question before this court 'is whether in view of all the testimony, the jury were warranted in believing beyond a reasonable doubt and therefore in declaring by their verdict' that the respondent was guilty as charged - - - - " *State* v. *Morin,* 149 Me. 279, 281.

In requisite degree the proof of carnal knowledge by the respondent is indispensable to a conviction of rape.

"In any event there are three elements which must

be present to constitute rape, viz: carnal knowledge, force, and the commission of the act without the consent or against the will of the ravished woman - - - - " *State* v. *Flaherty,* 128 Me. 141, 144. Cf. *State* v. *Dipietrantonio,* 152 Me. 41, 46.

Carnal knowledge is synonymous here with sexual intercourse.

" - - - - Carnal knowledge means sexual intercourse and is complete upon proof of penetration of the female organ by the male organ, however slight." *King* v. *Com.,* 165 Va. 843, 183 S. E. 187, 189.

" - - - - But from very early times, in the law, as in common speech, the meaning of the words 'carnal knowledge' of a woman by a man has been sexual bodily connection; and these words, without more, have been used in that sense by writers of the highest authority on criminal law, when undertaking to give a full and precise definition of the crime of rape, the highest crime of this character. - - - - " *Com.* v. *Squires,* 97 Mass. 59, 61.

The prosecutrix and specified victim in the instant case is the daughter of the respondent. We allocate and now array all testimony which approximates the element of carnal knowledge in the court record.

(From prosecutrix)

"Then what did he (respondent) do?

Well, then he got on me, got on top of me. This is embarrassing, - - - -

But what did he do after he got on top of you?

Could you answer that for me? What did he do after he got on top of you?

I just don't know what to say.

Did he have sex relations with you?

Yes.

How long was he on top of you?

Oh, about fifteen or twenty minutes, I guess. I really couldn't say, but it seemed awful long.

- - - - - - - - - - - - - - - - - - - -

Did he hurt you, - - - - ?

Yes.

What sort of pain did you experience at that time?

It was awful.

- - - - - - - - - - - - - - - - - - - -

When did you first see your father the next morning?

Oh, about nine.

- - - - - - - - - - - - - - - - - - - -

What did he say, - - - - ?

He said, he says, 'About last night,' he says, 'if anything should happen,' he says, 'you say that you have gone out with somebody.' He says, 'Do you hear?' And I said, 'Yes.' He says, 'Don't worry,' he says, 'I will take care of you.'

- - - - - - - - - - - - - - - - - - - -

At the time, (later, the same day) did you tell your mother what happened Sunday morning in your house on Park Avenue?

Did you make a complaint to your mother of rape on behalf of your father?

Yes.

And after the alleged rape took place, your father went to sleep, is that right?

Yes.

- - - - - - - - - - - - - - - - - - - -

Now, at the time you were in the Municipal Court getting a warrant for your father's arrest on an assault and battery, did your mother say anything to the Judge in your presence about this alleged rape?

No.

She knew about it, didn't she?

Yes.

Now, how long after the officer left did this alleged attack, or rape, take place?

I couldn't tell you exactly how long.

And you want this Court and Jury to believe that a man that had that much liquor was able to concentrate, was able to dance with you, was able to punch you, was able to take you into the bedroom and ravish you? Is that what you want?

Yes."

(From the arresting officer)

"Now, after you talked with (prosecutrix), did you go in search of someone?

I did, sir.

Did you place Joseph Croteau under arrest?

I did, sir.

On what charge?

Rape charge."

The prosecutrix upon oath stated that the respondent had had "sex relations" with her. Sexual relations comprise a comprehensive genus of which sexual intercourse and the latter's equivalent, carnal knowledge, are species. All carnal knowledge is sex relations but the converse is false. Carnal knowledge and sex relations are not constantly convertible terms.

"- - - - 'Sexual relations' ought not to be treated as synonymous with sexual intercourse." *Herriman* v. *Layman*, 118 Iowa 590, 92 N. W. 710, 711.

"- - - - The term 'sexual relations,' which is found in the information, is one of common usage and meaning connoting lust and sensuality - - - -"

*People* v. *Kohler*, 413, Ill. 283, 109 N. E. (2nd) 210.

The prosecutrix failed to confront the respondent with articulate testimony of the gravamen of the crime of rape.

She told the jury that she had experienced "awful pain" during the crisis of the attack upon her. There is considerable evidence in the record to verify that the young lady had been beaten, kicked, scratched and mauled. She gave no detail as to the precise locale of the specific "awful" pain and more decisively she did not affirmatively correlate such suffering with the perpetration of carnal knowledge. Her bodily condition and her pathetic but laconic description are equivocally consistent with brutal sex relations without or with carnal knowledge.

Prosecutrix related that on the same harrowing day she had complained to her mother "of rape on behalf of" her father. The word, "rape," had been tendered in the question addressed to the prosecutrix by the State's attorney. She had already described the outrage in formal testimony as sex relations. The limited questioning of the prosecutrix as to her report to her mother was justified.

> "There is practical unanimity of opinion, that the fact such a complaint (of rape) was made is always admissible as a part of the State's evidence in chief, if the prosecutrix takes the stand, *in corroboration of her evidence,* but not the details of the complaint - - - - " (Emphasis supplied.) *State* v. *King,* 123 Me. 256, 258.

Prosecutrix' complaint to her mother was, therefore, in corroboration, if at all, of her declaration in court that the respondent had forced her into resisted sex relations. Prosecutrix had given no testimony of rape or penetration but had had a full opportunity to do so. We are not being ultra discriminating here nor are we now delimiting the rules of a mere contest. This matter is grave. The instant case constitutes an accusation of rape, a heinous crime to be

drastically punished upon requisite proof. The State's attorney proffered the noun, rape, in a question to elicit collateral and corroborating testimony and to characterize what the girl had related to her mother. The prosecutrix tersely affirmed the term submitted to her. Under the circumstances of this case we have irrepressible misgivings that proof beyond reasonable doubt of carnal knowledge could be or was attained by mere indirection and by such a curative and efficient exercise or expedient. The technique is too perfunctory and the hazards therefrom are unacceptable. Nor is the doctrine of *State* v. *King, supra,* in conflict with our position but rather justifies it. To constrict or narrow sex relations to carnal knowledge or rape demanded here testimony more forthrightly and fulsomely detailed than that contributed by the condensed and ancillary question and reply concerning this daughter's complaint to her mother.

Prosecutrix related that upon her next meeting with the respondent several hours after her sordid experience with him he enjoined her to shield him, to dissemble and not to implicate him "if anything should happen." As a component with testimony of penetration such proposals if made by the respondent would have been exceedingly condemnatory. For want of evidence in the case at bar of carnal knowledge respondent's suggestions to the prosecutrix might indicate, e. g., only a natural and deep concern upon the part of the respondent that because of the prosecutrix' bruised and scratched condition and the state of her clothing her mother or some observer might discover that the girl had been attacked and outraged to some degree.

Under cross examination, as it appears earlier in this opinion, the prosecutrix was asked if she desired the court and jury to believe, *inter alia,*

" - - - - that a man (respondent) that had that much

liquor was able - - - - to take you into the bedroom and ravish you? - - - - ".

Her reply was, "Yes."

Arguably and inclusively the prosecutrix accepted and affirmed the word, "ravish," one meaning of which is rape. Literally her assent to the question confirmed only her father's temporary potencies and condition rather than any acts of his. The inquiry was complex and cumulative. As elicited, prosecutrix' assent to the term, "ravish," was oblique and, without more, is much less than adequate to sustain a grave conviction of carnal knowledge and penetration which the prosecutrix had not otherwise vindicated in this case.

Rape is an atrocious crime. Its punishment and deterrence are indispensable to the decency, order and existence of society. Rape accusations and trials are extremely conducive to the fomenting of the indignation and wrath of the citizenry. The charge is especially susceptive of perfidy. The penalty is ruinous. The gravamen of the offense is to be demonstrated beyond any reasonable doubt.

In reaching the conclusion that the case must be remanded for a new trial we do not thereby indicate in any way views upon the guilt or innocence of the accused. We do no more than say that the evidence here presented by the prosecutrix or from any other source was not sufficient to establish the vital fact of penetration. Carnal knowledge was not demonstrated beyond all reasonable doubt and we must conclude that the jury was not warranted in its verdict of guilty.

The mandate must be:

*Appeal sustained.*
*Motion for new trial granted.*