George **RUNDLETT**,
Petitioner-Appellant,

v.

Richard **OLIVER**, and State of **Maine**,
Respondents-Appellees.

No. 79–1044.

United States Court of Appeals,
First Circuit.

Argued May 10, 1979.

Decided Aug. 1, 1979.

Eleanor Krasnow, Manchester, N. H., for petitioner-appellant.

Michael E. Saucier, Asst. Atty. Gen., Augusta, Me., for respondents-appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Circuit Judge, DEVINE, District Judge.*

DEVINE, District Judge.

Appellant, George Rundlett, was indicted and convicted on three counts of violating 17 M.R.S.A. § 3151 (1964), Maine's former "statutory rape" law. His challenge to the statute on "equal protection" grounds was rejected by the Supreme Judicial Court of Maine. *State v. Rundlett*, 391 A.2d 815 (Me.1978). He then sought habeas corpus relief from the United States District Court for the District of Maine, and here appeals from the denial of such relief. For the reasons hereinafter outlined, we affirm the decision of the district court.

The statute at issue, 17 M.R.S.A. § 3151, provided:[1]

> *Whoever* ravishes and carnally knows any female who has attained her 14th birthday, by force and against her will, or *unlawfully and carnally knows and abuses a female child who has not attained her 14th birthday*, shall be punished by imprisonment for any term of years. (Emphasis added.)

In its consideration of the initial appeal, the Maine court noted that the word "whoever" in the above statute is facially a "gender-neutral" term. 391 A.2d at 817. But the Maine courts have construed "carnal knowledge" to be synonymous with sexual intercourse, which has been defined as "penetration of the female sex organ by the male sex organ". *State v. Bernatchez*, 159 Me. 384, 385, 193 A.2d 436, 437 (1963); *State v. Croteau*, 158 Me. 360, 362, 184 A.2d 683, 684 (1962). The evidence presented at appellant's jury trial in the state court warranted findings of fact that, as the junior high school homeroom teacher of the complaining witness, he engaged in sexual intercourse with her at various times in late 1975 and early 1976. At all such times the complainant was under fourteen years of age.

Throughout all stages of his appeal, the appellant has relied on our decision in *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). In affirming the district court's grant of a writ of habeas corpus in that case, we considered New Hampshire's former, gender-based, statuto-

---

* Of the District of New Hampshire, sitting by designation.

1. 17 M.R.S.A. § 3151 was superseded and replaced on May 1, 1976, by Section 252 of the Maine Criminal Code, 17-A M.R.S.A. § 252(1)(A) (Supp.1978), which provides in pertinent part:

> A *person* is guilty of rape if he engages in sexual intercourse:
> A. With any *person*, not his spouse, who has not in fact attained his 14th birthday . . . . (Emphasis added.)

ry rape law, RSA 632:1(I)(c), which provided: [2]

> A *male* who has sexual intercourse with a *female* not his wife is guilty of a Class A felony if . . . (c) the *female* is unconscious or less than fifteen years old. (Emphasis added.)

Ruling that the applicable equal protection standard was that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives" (*Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 [1976], *rehearing denied*, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 [1977]), we rejected New Hampshire's contentions that the gender-based classification outlined in its statute reasonably reflected particular legislative concerns with the prevention of physical injury resulting from the act of intercourse, and the prevention of pregnancy of the under-aged partner. 564 F.2d at 607–09. In addition, we found that the apportionment of burdens under New Hampshire's statutory scheme was ill-suited to achievement of the overall objectives of its law—the prevention of the sexual exploitation of children through the act of sexual intercourse. *Id.*

The appellant here argues that the logic of *Meloon* compels a similar result in this case, while appellees, although citing the same pregnancy and injury protection rationales proffered by New Hampshire in that case, seek to distinguish the Maine statute on two grounds.

## I.

The appellees' initial contention is that since male and female perpetrators are not similarly situated with respect to the preventive purposes of Section 3151, which purposes are grounded in unique physical differences between the sexes, the statute need only pass muster under the traditional minimum-rationality equal protection test of judicial review. At the outset, we note our agreement with appellant that appellees' argument that male and female perpetrators are *not* similarly situated under this statute is in contradiction of appellees' opening concession on brief that the statute does indeed discriminate on the basis of sex.[3]

Discrimination connotes unequal *treatment* of similarly situated parties. Appellees argue that with respect to the *purposes* of the statute, males and females are not similarly situated. The correctness of that contention is irrelevant to our analysis. Our inquiry must necessarily focus upon whether males and females are different in fact with respect to the definitional facts of the offense of which appellant was found guilty. Careful examination of *Wark v. Robbins*, 458 F.2d 1295 (1st Cir. 1972), cited by appellees in support of their contention, demonstrates that our focus in that case was cast in such terms.[4]

Under Section 3151, the act which triggers criminal liability is sexual intercourse—penetration (however slight) of the female sex organ by the male sex organ. *State v. Croteau*, 158 Me. 360, 362, 184 A.2d 683, 684 (1962). While it may be argued that this is indeed "a unique physical act",[5] the very definition of sexual intercourse adopted by the Maine courts precludes that act from being performed by a member of one sex without the participation of a mem-

---

**2.** RSA 632:1(I)(c) was superseded and replaced on August 6, 1975, by RSA 632–A:2 (Supp. 1977), which provides in pertinent part:

> A *person* is guilty of a class A felony if he engages in sexual penetration with *another* person . . . (XI) When the victim is less than thirteen years of age. (Emphasis added.)

**3.** We consider it to be significant that the Maine court concluded that the statute did create a classification based upon sex. *State v. Rundlett*, 391 A.2d at 817.

**4.** In *Wark* we placed upon the appellant, a male escapee from the all-male State Prison, the burden of establishing a prima facie similarity between himself and an escapee from the all-female Women's Reformatory in terms of the definitional facts of the challenged escape statute.

**5.** Appellees so argued in their brief before the Maine court (see Appellant's Brief, Exhibit A, at p. 6).

ber of the other. Section 3151 merely operates to punish the members of one sex for an act that both sexes simultaneously commit, at least in those cases wherein the female actor is below a certain age. The Maine court has characterized this statutory scheme as follows:

> In short, section 3151 created a classification based on sex. It neither protected males under [fourteen] nor punished females for engaging in sexual intercourse with males below that age. *State v. Rundlett, supra*, at 817.

Because the gender-based classification within Section 3151 centers upon a punishable act which, stripped of its surroundings, circumstances, or consequences, is equally the product of male and female actors, the standard of review prescribed by *Craig v. Boren, supra*, is applicable, and the recent case of *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979) is distinguishable.[6]

█ The appellees further argue that viewing Section 3151 within the totality of the larger statutory scheme in effect at the time of appellant's conviction governing sex offenses involving minors, it may be concluded that male and female children were afforded equal protection, and that male and female offenders were equally subject to criminal sanction. But under Section 3151 all males, regardless of age or marital status, were subject to criminal sanction for penetration, however slight, of the sex organ of a female under fourteen years of age. By contrast, a female would escape such sanction from engaging in sexual intercourse with a male under fourteen years of age, unless the state chose to impose criminal liability upon her for adultery (if she were married) pursuant to 17 M.R.S.A. § 101 (repealed effective May 1, 1976), fornication (if she were unmarried) under 17 M.R.S.A. § 1551 (repealed effective May 1, 1976), or for taking indecent liberties (if she were twenty-one years of age or older) pursuant to 17 M.R.S.A. § 1951 (repealed effective May 1, 1976).[7] Discounting the unlikely possibility of conviction for incest, adultery, or fornication,[8] a female "offender" under the age of fourteen would escape sanctions pursuant to 17 M.R.S.A. § 1951, which reaches only offenders who have attained the age of twenty-one.

Further, regardless of the particular offense, if any, charged against a female engaging in sexual intercourse with a male under the age of fourteen, the consequences for a male convicted of the same act under Section 3151 alone are potentially more severe (punishment by imprisonment for any term of years) than the longest term of imprisonment that could be imposed upon a female (not more than ten years of hard labor under now-repealed Section 1951).[9]

---

**6.** In *Parham*, the Court upheld a Georgia statute which precludes a father who has not legitimated a child from suing for her wrongful death. The Court considered but distinguished the application of the test outlined in *Craig v. Boren, supra*, on the ground that in those cases where males and females are not similarly situated, the less restrictive constitutional test was applicable. 99 S.Ct. at 1747.

**7.** If the female offender were within a certain degree of consanguinity or affinity with her "victim", she might be subject to criminal sanction for incest under 17 M.R.S.A. § 1851 (repealed effective May 1, 1976). Under similar proper circumstances, a male who engaged in sexual intercourse with a female under fourteen might also be subject to sanctions over and above 17 M.R.S.A. § 3151, pursuant to 17 M.R.S.A. §§ 101, 1551, 1851, and 1951.

**8.** It is extremely doubtful that Maine would prosecute a female under the age of fourteen for adultery or fornication in light of its judgment, implicit in 17 M.R.S.A. § 3151, that a female under such age is incapable of appreciating the significance of (and therefore should not be held liable for the consequences of) the act of sexual intercourse. Indeed, 17 M.R.S.A. § 3152 (repealed effective May 1, 1976) indicated a presumption that this appreciation might well be lacking until a female reaches the age of sixteen.

**9.** Even if maximum consecutive prison sentences were imposed upon a married female under 17 M.R.S.A. § 101 (adultery), and under 17 M.R.S.A. § 1951 (indecent liberties), or upon an unmarried female under 17 M.R.S.A. § 1551 (fornication) and Section 1951, they would amount to no more than fifteen years, or ten years two months respectively. By contrast, a male offender may be subject to a punishment under Section 3151 in addition to the sanctions applicable to females under §§ 101, 1551, and 1951.

While we do not here attempt analysis of the constitutionality of Maine's former statutory scheme of punishment for sex offenders, we conclude from the foregoing examination that male "offenders" were far more likely to be subject to prosecution for engaging in sexual intercourse with females under fourteen years of age than were females who engaged in the same conduct with males under the age of fourteen. In light of these observations, it can hardly be contended that the role of deterrence, and therefore the equal protection of potential male and female minor victims, was well served.

## II

We now address the primary issue presented by this appeal: whether the district court erred in denying appellant's petition for a writ of habeas corpus, thereby upholding the constitutionality of 17 M.R.S.A. § 3151 under the standard of *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and distinguishing our holding in *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978).

As we have previously indicated, the former New Hampshire statutory rape statute invalidated in *Meloon* varies only slightly in wording and operation from 17 M.R.S.A. § 3151. However, standing alone, this factor does not trigger a similar finding of unconstitutionality in this case, for as we noted in *Meloon*,

> We want to take care to indicate the limited nature of our holding. We have found only one particular statutory rape law to be unconstitutional. We have not reflected on nor do we intend to question the constitutionality of the laws of other states. We express no opinion as to whether on a different record some other statute would pass constitutional scrutiny.

564 F.2d at 609.

In *Meloon*, as here, allegedly uniquely female concerns were proffered in support of the gender-based classification embodied in the statutory rape law: The prevention of physical injury to young females resulting from sexual intercourse and the prevention of pregnancy in under-age female partners to that act. Neither rationale saved the statute in that case. With respect to the pregnancy prevention rationale, we noted that "New Hampshire presents us with not an iota of testimony or evidence that the prevention of pregnancy was a purpose of its statutory rape law. Indeed, all inferences that may be drawn from the materials presented to us are to the contrary". 564 F.2d at 607. Similarly, with respect to the concern for physical injury to female children, we commented that "the state has given us no sense of how common an occurrence this form of injury is . . . particularly in light of the 'penetration, however slight' definition of the offense". *Id.* at 608. Since we did not understand New Hampshire to argue that this form of injury was the exclusive danger (pregnancy aside) which its statute was designed to mitigate, and because we perceived "that the statute and its classification cover[ed] a far larger class [of females] than this justification would warrant", we found a lack of precision, insufficient to support the asserted connection

> between (1) the fact that one subclass of one gender class of victims has some indeterminate likelihood of suffering an additional injury to which the other gender class is not susceptible and (2) the state's statutory scheme which penalizes only one gender exclusively and protects the other gender exclusively.

*Id.* [10]

---

10. We also found New Hampshire's case for its gender-based classification wanting in two other respects. First, we noted that the state had made no showing that by "exclusively protecting a class disproportionately vulnerable to attack and offering no protection to the other gender", it was maximizing its overall objective of protecting all children from exploitation in the form of sexual intercourse. Second, we were provided with no indication that this overall objective was closely served by visiting criminal sanctions upon males alone.

In contrast with the complete lack of support for New Hampshire's rape law that generated our holding in *Meloon*, the district court in the case at bar noted the existence of extensive legislative history and supporting authority to back up Maine's asserted purposes of preventing physical injury and pregnancy in young females. Citing the history, language, and legislative scheme of Maine's statutory rape law as analyzed by the Supreme Judicial Court in *State v. Rundlett*, 391 A.2d 815 (Me.1978), the district court agreed with that highest state court that the statute we invalidated in *Meloon* was clearly distinguishable. Because both the opinion of the district court and the arguments put forth by the appellees on brief rely so heavily upon the analysis of the legislative purposes behind 17 M.R.S.A. § 3151 articulated by the Maine court in *Rundlett, supra*, we are faced with deciding how much deference we should accord its conclusions. Such a determination cuts to the heart of the ongoing interplay between state and federal judiciaries.

■ It is well-established law that "state courts are the ultimate expositors of state law" and the federal courts are bound by the constructions placed upon state statutes by state courts absent extreme circumstances. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Pagan Torres v. Negron Ramos*, 578 F.2d 11, 14 (1st Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). "Construction" in this sense refers to the structure of a statute, what its words mean, and how it operates. *See, e. g. Wilbur v. Mullaney*, 496 F.2d 1303, 1305 (1st Cir. 1974), *aff'd*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Brown v. Ohio*, 432 U.S. 161, 167, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Gurley v. Rhoden*, 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975).

■ Where, as in the instant case, it is necessary to determine what governmental objections are sought to be served by a particular state statute, the views of the highest state court should also be given careful consideration. *Reitman v. Mulkey*, 387 U.S. 369, 376–79, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). Of course, we need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrate that the asserted purpose could not have been a goal of the legislation. *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 536, 537, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Weinberger v. Weisenfeld*, 420 U.S. 636, 648 (1975).

In *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), the court followed the "inquiry into actual purposes" approach of *Weisenfeld* to conclude that the intent of Congress differed from that represented by the Government. In *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the purpose of the enhancement of traffic safety that was suggested by the Oklahoma Attorney General was accepted as the basis for disposition of the case on the ground that the gender-based distinction contained in the challenged statute did not closely serve to achieve that objective.[11] Likewise, in *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), involving a challenge to the constitutionality of Alabama alimony statutes, the Supreme Court conceded the legitimacy of certain of the legislative objectives behind these statutes as proffered by the Alabama Court of Civil Appeals, and focused its analysis primarily on whether the gender-based classification therein was substantially related to achievement of those objectives.[12] The case of

---

11. The Court thus "[left] for another day consideration of whether the statement of the State's Assistant Attorney General should suffice to inform this Court of the Legislature's objectives, or whether the Court must determine if the litigant simply is selecting a convenient, but false, *post hoc* rationalization." 429

U.S. at 200, n. 7, 97 S.Ct. at 458 n. 7. Appellant here contends that this "other day" arrived in *Califano v. Goldfarb, supra*.

12. However, the Court took care to note in a footnote that

Of course, if upon examination it becomes clear that there is no substantial relationship

*Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), challenging a New York statute governing adoption of illegitimate children, appears to utilize this same analytical approach.

Viewing the Maine Supreme Judicial Court's analysis of the legislative history of 17 M.R.S.A. § 3151 in light of the above discussion, we feel it appropriate to accord some deference to that court's conclusions. This is especially true with respect to the Maine court's interpretation of the meaning of the words "perrilous to the life and well-being of the childe" found in a statutory antecedent to 17 M.R.S.A. § 3151, as reflecting the legislature's concern for the "special vulnerability of female children to physical injury from sexual intercourse. *State v. Rundlett,* 391 A.2d at 819. Indeed, we accept the Supreme Judicial Court's conclusion, from the presence of the above language, that "protecting the 'life and well-being' of young females was expressly de-

clared as a *principal* reason motivating the legislation from which the Maine statute currently under consideration directly derives." *Id.* at 820, n. 16. (Emphasis supplied.) From our own review of the history of 17 M.R.S.A. § 3151, we do not feel that this reason was in any way detracted from when the preamble in which the above words appeared was omitted upon consolidation in 1697 of the provisions governing forcible and statutory rape.[13] *See Commonwealth v. Roosnell,* 143 Mass. 32, 38, 8 N.E. 747, 750 (1886). Nor do we perceive that prevention of physical injury became any less principal a reason when the Maine legislature raised the cut-off age for female victims from ten to thirteen in 1887 (P.L. 1887, ch. 127, §§ 1, 2) and from thirteen to fourteen in 1889 (P.L.1889, ch. 180, §§ 1, 2).[14] Appellant cites the Model Penal Code, Tentative Draft # 4, § 207.4, Comment 10, and Note: Forcible and Statutory Rape, 62 Yale L.J. 55 at 77 for the proposition that this extension of statutory coverage to fe-

---

between the statutes and their purported objectives, this may well indicate that these objectives were not the statutes' goals in the first place. *See,* Ely, *The Centrality and Limits of Motivation Analysis,* 15 San Diego L.Rev. 1155 (1978).
99 S.Ct. at 1112, n. 10.

**13.** Maine did not separate from Massachusetts until 1821, so that the two states have a common legislative history prior to that time.

In the volume Massachusetts Colony and Province Laws (Ed.1814) published by order of the Massachusetts General Court, the forcible rape and statutory rape laws, as they appeared prior to their consolidation, are reproduced as follows (with their original marginal notations):

Rape.
SECT. 15. If any man shall ravish any maid, or single woman, committing carnal copulation with her by force, against her own will; that is above the age of ten years, he shall be punished either with death or with some other grievous punishment according to circumstances, as the judges or general court shall determine. [1649.]

Rape of a child.
SECT. 16. Forasmuch as carnal copulation with a woman child, under the age of ten years, is a more heinous sin than with one of more years, as being more inhumane and unnatural in itself, and more perilous to the life and well being of the child:

It is therefore ordered by this court and the authority thereof, that whosoever he be shall commit or have carnal copulation with any such child under ten years old, and be legally convicted thereof, he shall be put to death. [October, 1669.]

*Id.* at 60. And in that same volume is reprinted Prov.St.1697, c. 18, entitled "An act against ravishment or rape," which first accomplished the consolidation of the above two colony laws into much the same form as they presently appear:

Be it enacted by the lieutenant governor, council and representatives, in general court assembled, and by the authority of the same, that if any man shall ravish any woman, committing carnal copulation with her by force against her will, or if any man shall unlawfully and carnally know and abuse any woman-child under the age of ten years, every person and persons offending in either of the cases beforementioned, being thereof convicted, shall be accounted felons, and shall be adjudged to suffer the pains of death, as in cases of felony.
*Id.* at 301–02.

**14.** The New Hampshire statute which we held unconstitutional in *Meloon, supra,* embodied a larger class of female victims, up to the age of fifteen, than is covered by 17 M.R.S.A. § 3151.

males under fourteen effectively included sexually mature girls, *i. e.*, girls with the physical capacity to engage in intercourse, for whom consensual sexual relations would unlikely produce physical harm. Yet the very age figures cited by appellant, as well as those cited by appellees, indicate that a significant number of females may not experience menarche, the appearance of periodic vaginal bleeding and the clinical indicator of sexual maturity (Danforth, Obstetrics and Gynecology 166, 3d ed., 1977), until age fourteen. And one study cited by both appellant and appellees indicates that the average age of menarche (now thirteen to fourteen according to that author) has become progressively earlier during the past century. Goldfarb, 20 Clin.Ob. and Gyn. 625 (1977).

In light of all the above, we see no reason to doubt the Maine Supreme Judicial Court's interpretation that prevention of physical injury constitutes a principal governmental objective underlying 17 M.R.S.A. § 3151. Nor do we feel it is appropriate to our function to question a legislative judgment that this objective is an important one. Of course, it remains for us to determine, under the standard set forth in *Craig v. Boren*, 429 U.S. at 197, 97 S.Ct. 451, 50 L.Ed.2d 391, whether the gender-based classification embodied in the statute in question is substantially related to achievement of this objective. Because we find that the prevention of physical injury purpose of 17

M.R.S.A. § 3151 passes muster under the *Craig* standard, we need not address the question of whether Maine's suggested pregnancy prevention rationale also constitutes an "actual" purpose sufficient to justify the gender-based classification here challenged.[15]

With respect to the injury prevention rationale proffered by the State of New Hampshire in *Meloon*, we were concerned that the statute in that case and its classification scheme covered a far larger class of female victims than the injury prevention justification would warrant. 564 F.2d at 608. Moreover, neither the State's highest court (*State v. Meloon*, 116 N.H. 669, 366 A.2d 1176 [1976]), nor the State's advocate in that case presented us with a sense of how common this form of injury was. As has been noted above, the age of female victims in the statute here in question is set lower than was the case in the New Hampshire statute in *Meloon*. Here, then, there is greater congruity between the class of victims and the potential risk of injury to them that is sought to be prevented. And in this case, the State of Maine's advocate has offered substantial statistical and medical evidence to support its contention that young females, unlike young males, are often victims of physical injury resulting from a crime that is predominantly committed by males.[16] Although this evidence is open to varying interpretation, we are satis-

---

**15.** Parenthetically, however, we note (as we did in *Meloon*, 564 F.2d at 608, n. 7) that we remain in doubt as to the acceptability of justifying a gender-based classification on the basis of a pregnancy prevention rationale. We would find that justification particularly troubling in the case at bar. First, the Maine Supreme Judicial Court's conclusions of legislative history on this point need not be accorded the same degree of deference we have given above, since that court's fashioning of the pregnancy prevention purpose was based, not on language found in the statute itself or its antecedents, but upon after-the-fact inferences drawn from failures to act on the part of the Maine legislature. Second, we doubt that the Maine legislature, having adjudged that persons under a certain age are incapable of giving informed consent to the act of sexual intercourse, would

choose to penalize only a male under-aged partner for taking the (unfortunately less obvious than with physical injury) risk of conceiving a child. At any rate, we do not perceive appellant's case to be the best context in which to resolve that difficult inquiry.

**16.** We recognize that "proving broad sociological propositions by statistics is a dubious business, and one that inevitably is in tension with the normative philosophy that underlies the Equal Protection Clause." *Craig v. Boren*, 429 U.S. at 204, 97 S.Ct. at 460. This case, however, presents questions neither as broad nor as sociological as those found in *Craig*, where the State of Oklahoma attempted to deduce from statistics certain generalizations about drinking patterns of males and females at certain ages.

fied that the gender-based classification embodied in 17 M.R.S.A. § 3151 is a "proxy" sufficiently accurate for restricting potentially physically injurious sexual intercourse via its criminal sanction. Indeed, if it is accurate to say that physical injury resulting from sexual intercourse is uniquely suffered by young females, over and above whatever psychic injury they may suffer as often as young males, then the State may be further justified in subjecting only male "offenders" to additional sanction under 17 M.R.S.A. § 3151 over and above the penalties for adultery, fornication, or indecent liberties that may be imposed on offenders of either sex.[17]

In sum, we hold that 17 M.R.S.A. § 3151 (1964), and appellant's conviction thereunder, does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

*Affirmed.*

LEVIN H. CAMPBELL, Circuit Judge (concurring).

I join in upholding the Maine statute because, although it is much like the New Hampshire statute invalidated in *Meloon v. Helgemoe*, 564 F.2d 602 (1st Cir. 1977), this court carefully limited the reach of its opinion in *Meloon*, leaving room for upholding a

similar statute if faced with a different record presenting more plausible or better substantiated legislative purposes that could meet the requisite degree of heightened scrutiny for sex-based classifications. *See* 564 F.2d at 607, 608. Unlike our dissenting colleague, I feel that the gaps noted in *Meloon* have been adequately filled in.

This is not to say that I rest easy with the kind of inquiry into legislative purposes that *Meloon* initiated.[1] While there are cases where it is necessary to look into the motives of legislators, *e. g., Personnel Administrator of Massachusetts v. Feeney*, —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), and while this is an area that has generated much recent comment, see the collection of articles in 15 San Diego L.Rev. 925 (1978), this is a path that presents great difficulties. As Chief Justice Warren pointed out,

"Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. It is entirely a different

---

17. Of course, our review is confined solely to the constitutionality, on its face, of 17 M.R.S.A. § 3151.

1. It is the following paragraph from *Meloon* which I especially question:

"We examine the pregnancy prevention rationale with special wariness. Certainly the fact that women and not men bear children is a fundamental distinguishing characteristic of the two sexes and as such it can be the basis for some gender based legislation; but there is a danger that the very uniqueness of this characteristic makes it an available hindsight catchall rationalization for laws that were promulgated with totally different purposes in mind. New Hampshire presents us with not an iota of testimony or evidence that the prevention of pregnancy was a purpose of its statutory rape law. Indeed, all the inferences that may be drawn from the materials presented to us are to the contrary." [Footnote omitted.]

*Meloon v. Helgemoe*, 564 F.2d at 607. The passage suggests that it is not sufficient to identify important governmental objectives

that are achieved substantially by a challenged statute. More is required—namely, "testimony or evidence" that the asserted objectives were the "purposes in mind." Thus, while our opinion in the instant case rests on the prevention of injury rationale and avoids the question of pregnancy prevention, the above passage has affected the focus of our analysis of the issue. To supply the requisite "testimony or evidence" and to divine the "purposes in mind," both the Maine Supreme Court and we are carried back to a 1669 statutory antecedent to the challenged statute which provides that, "carnal copulation . . . is . . . perrilous to the life and well-being of the childe . . . ." *State v. Rundlett*, 391 A.2d 815, 819 (Me.1978), ante at 501. I do not know what was prominent in the minds of the legislators of a day when people may not have drawn the fine distinctions between religious and health concerns of our era, and I cannot, in all candor, say that I believe such an inquiry to be especially illuminating. *See* note 3, *infra.*

matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it."

*United States v. O'Brien,* 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1978) (footnote omitted). That two identical statutes could be held unconstitutional in one instance and constitutional in another simply because of the "purposes" attributed to those who supported them is troubling. Results are likely to depend, as we now see, simply on the extent of documentation—if any—compiled by the enacting body and on the adequacy of the record compiled for us by counsel. (A third factor, as our dissenting colleague suggests, may be the scholarship of the writing judge.) Constitutional adjudication should be less fickle.[2]

When legislative purposes behind sex-based classifications are not explicitly stated and endorsed, I would prefer to infer them when possible from the effects of the statute itself. Here, I think it fair to say that the statutory rape law has the effect of protecting women from sexual intercourse at an age when sexual activity or pregnancy can be psychically and physically damaging, and I think it can properly be inferred that this was at least one of the legislative "purposes" at work.[3] It is reasonable to take judicial notice of the fact that only women can become pregnant and that they cannot escape the consequences of their sexual activity as readily as can men. This, as well as the possibility of more serious physical harm to pre-pubescent women relied on by Judge Devine, for me legitimates the purposes of protecting young women. I think that achieving this purpose by holding men criminally liable for engaging in sexual activity with women under age is sufficiently related to this purpose to pass constitutional muster under the heightened degree of scrutiny accorded sex-based statutory classifications.

BOWNES, Circuit Judge (dissenting).

I fail to perceive the essential difference between this statute and the New Hampshire one we held unconstitutional in *Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir. 1977), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). Both statutes discriminate on the basis of sex. Both punish a male, but not a female, for engaging in consensual sexual intercourse which has been defined under the common law of both states as "penetration, however slight." Under both statutes, a male under the age of consent who has sexual intercourse with a female of the same age is liable to be convicted of a felony. It is true, of course, that the Maine statute defined the age of consent as fourteen and in New Hampshire

---

2. Motivation analysis can also be criticized because it "enables judges to read their ideas of good social policy into the law . . . ." A. Miller, "If 'The Devil Himself Knows Not the Mind of Man,' How Possibly Can Judges Know the Motivation of Legislators?" 15 San Diego L.Rev. 1167, 1171 (1978).

3. I am especially unwilling to condemn statutes, as Judge Bownes would do, by inferring that, because they were passed in earlier times, they must be tainted by now outmoded moralisms. Religious or moral precepts have been known to have sound—albeit unarticulated—biological, genetic, or social underpinnings.

The question for us should be whether the legislation bears scrutiny under presently accepted modes of thought, not whether its supporters may have endorsed it for reasons we can no longer accept. The proper question in my view is whether in today's world we can discern a substantial relationship between the statutory classification and a governmental objective important enough to sustain such a gender-based classification. In making such a judgment, history is perhaps relevant, but far more important is a court's perception of the world around it, and the current interests reasonably to be served.

it was set at fifteen. As the majority recognizes, however, this is a distinction, but not a difference. It is also significant that both Maine and New Hampshire have repealed their sexually discriminating statutes and replaced them with equally effective but sex neutral laws.[1] If, then, as the majority candidly states, "the former New Hampshire statutory rape statute invalidated in *Meloon* varies only slightly in wording and operation" from the Maine statute, what is the explanation for forsaking our teaching in *Meloon* and embracing the opinion of the Supreme Judicial Court of Maine with open arms?

There are, I suggest, two explanations. The first is that, unlike *Meloon* where the intercourse was really consensual, here the facts show that the female was overborne by the age of her partner and his status as a teacher in the school she attended. In fact, the evidence adduced at the trial strongly suggests that the defendant, at least the first time, had sexual intercourse with the complainant "by force and against her will." The case was, however, expressly tried on the theory that consent was neither an issue nor a defense.

The second explanation for the result reached by the majority is that it, like the district court, was seduced by the impressive historical exegesis of the statute by the Chief Justice of the Supreme Judicial Court of Maine. Analysis reveals, however, that the purposes and reasons for the Maine statute as articulated by Maine's eminent Chief Justice are not based on any expressed legislative intent, but rather on the court's determination of what that intent *would have been* if there had been a legislative history to examine. The Maine court goes back to 1669 when Massachusetts passed its first statutory rape law to find

the only expressly stated legislative comment: "carnal copulation with a woman childe, under the age of ten years, is . . perrilous to the life and well-being of the childe . . . ." *State v. Rundlett*, 391 A.2d 815, 819 (Me.1978). It then carries this "legislative history" forward over a period of two hundred years to 1889 when the statute involved here was enacted. During that time span, the age of consent was raised from ten to thirteen in 1887, and to fourteen in 1889. There is, however, no recorded legislative comment at all as to the purpose and intent of the statute. It is clear that this statute has no legislative history in the traditional sense, and that the Supreme Judicial Court of Maine has engaged in a singular feat of attribution. By tracing the history of the statute, the Maine court has created its legislative history. One cannot help but be reminded of the observation that "he who writes history makes history."

The majority accepted Maine's position that the potential for physical injury to the female, and not the male, justified the statute. It relies heavily on the fact that here, unlike *Meloon*, the State's advocate "has offered substantial statistical and medical evidence to support its contention that young females, unlike young males, are often victims of physical injury resulting from a crime that is predominantly committed by males." While this may be so, although such evidence was not introduced in the district court, my brethren miss the point. There is no indication that the Maine legislature considered any reason or purpose for the statute. As the Supreme Judicial Court of Maine makes clear, the legislature simply followed the example of Massachusetts and copied its statute. *State v. Rundlett, supra*, 391 A.2d at 820. It

---

1. 17–A M.R.S.A. § 252(1)(A) (Supp.1977): "A *person* is guilty of rape if he engages in sexual intercourse: A. With any *person*, not his spouse, who has not in fact attained his 14th birthday . . . ." (emphasis added).

NH RSA 632–A:3: "A *person* is guilty of a class B felony . . . if he engages in sexual penetration with a *person* who is thirteen years of age or older and under sixteen years of age." (emphasis added).

NH RSA 632–A:2: "A *person* is guilty of a class A felony if he engages in sexual penetration with another *person* . . . .:

. . . . .

XI. When the victim is less than thirteen years of age" (emphasis added).

would appear that at the only time any real thought was given to the statute and its implications, it was replaced by a sexually neutral one.

While I am willing to give due deference to the interpretation that the highest court of a state gives to its own statute, I am not willing to follow it backwards in time and thought to the 19th century when the sexual differences between male and female fostered the almost universally accepted but unproven myth that women were inferior to men in all respects and had to be protected by them and from them.

The same arguments advanced and rebuffed in *Meloon* are propounded here.

I would reverse on the basis of our analysis in *Meloon v. Helgemoe, supra,* 564 F.2d 602.