**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**McDonald HICKS, Eli Davis, Jr.,
Defendants-Appellees.**

No. 78–2534.

United States Court of Appeals,
Ninth Circuit.

April 16, 1980.

Rehearing Denied Aug. 15, 1980.

Dale Danneman, Asst. U. S. Atty., Phoenix, Ariz., argued, for plaintiff-appellant; William F. Woods, Asst. U. S. Atty., Phoenix, Ariz., on brief.

J. Douglas McVay, David M. Ochoa, Asst. Federal Public Defender, Phoenix, Ariz., for defendants-appellees.

## OPINION

Appeal from the United States District Court for the District of Arizona.

Before WALLACE and TANG, Circuit Judges, and WHELAN,* District Judge.

WALLACE, Circuit Judge:

The government appeals the dismissal of an indictment against Hicks and Davis alleging against Davis two counts and against Hicks one count of carnal knowledge of a female Indian under 16 years of age in violation of 18 U.S.C. § 1153 and § 2032.[1] In response to arguments that the statutes' classification on the basis of gender denies equal protection under the law, the district judge dismissed the indictment. We affirm.

### I

We first determine the proper standard of scrutiny to be applied in assessing the constitutionality of the statutes in question. The government does not dispute that the statutes classify on the basis of gender. Hicks and Davis argued before the district judge that only males can be perpetrators, and only females victims, of the crime of carnal knowledge. The statutes assign the roles of victim and criminal on the basis of gender. Had Hicks and Davis been female, they would not have been charged,[2] and the statute thus discriminates against males.

Because federal statutes are before us, we examine the constitutionality of the dissimilar treatment they impose pursuant to the Fifth Amendment. "[T]he Due Process Clause of the Fifth Amendment forbids the Federal Government from denying equal protection of the laws." *Vance v. Bradley*, 440 U.S. 93, 94 n.1, 99 S.Ct. 939, 942 n.1, 59 L.Ed.2d 171 (1979); *see Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 1228 n.2, 43 L.Ed.2d 514 (1975). Accordingly, we employ the standard of equal protection the Supreme Court has developed for the scrutiny of gender classifications.

---

* Honorable Francis C. Whelan, United States District Judge, Central District of California, sitting by designation.

1. 18 U.S.C. § 1153 states in part:
   Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . . carnal knowledge of any female, not his wife, who has not attained the age of sixteen years . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
   18 U.S.C. § 2032 states in part:.
   Whoever, within the special maritime and territorial jurisdiction of the United States, carnally knows any female, not his wife, who has not attained the age of sixteen years, shall, for a first offense, be imprisoned not more than fifteen years, and for a subsequent offense, be imprisoned not more than thirty years.
   The indictment charged Hicks and Davis under both statutes. Though we must necessarily decide the constitutionality of each, we decide only the constitutionality of that portion of § 1153 pertaining to the offense of carnal knowledge. *See* note 10 *infra*.

2. The government asserts that carnal knowledge of a male by a female would be treated as an assault pursuant to 18 U.S.C. § 113 but does not contend that, absent an assault, females could be criminally liable for such conduct.

■ In *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Court considered the constitutionality of Oklahoma statutes prohibiting the sale of 3.2 percent beer to males under 21 and to females under 18. There the Court stated that "[t]o withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* at 197, 97 S.Ct. at 457. The Court has continued to hold this standard applicable to gender classifications. *E. g., Califano v. Westcott*, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979); *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Orr v. Orr*, 440 U.S. 268, 279, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Califano v. Webster*, 430 U.S. 313, 316–17, 97 S.Ct. 1192, 1194–95, 51 L.Ed.2d 360 (1977) (per curiam); *accord, Blake v. City of Los Angeles*, 595 F.2d 1367, 1384 (9th Cir. 1979). We must, therefore, apply that standard.

## II

■ At the hearing on the motion to dismiss, Hicks and Davis offered expert testimony and exhibits to demonstrate the unconstitutionality of section 2032. The court rejected these offers of proof. The government then argued that the statutes before us have two purposes: the prevention of unwanted pregnancy and the prevention of physical injury to young females.[3] It offered no evidence. The district judge stated that the statutes "[m]ay or may not have to do with pregnancy," and, relying in part on *Craig*, dismissed the indictments. On appeal, the government's central argument is that Hicks and Davis had the burden of going forward in this case and, therefore, that it first fell to them to show that the statutes did not satisfy the *Craig* standard. We disagree.

In *Berkelman v. San Francisco Unified School Dist.*, 501 F.2d 1264 (9th Cir. 1974), we relied on *Reed v. Reed*, 404 U.S. 71, 92

S.Ct. 251, 30 L.Ed.2d 225 (1971), and on the plurality and concurring opinions in *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), in stating that the standard of review applicable to classifications based on sex "[requires] the government (state or federal) to produce evidence that the challenged classification furthers the central purpose of the classifier." *Id.* at 1269. We invalidated the school district's gender-based admissions standards in part because the district offered "[n]o actual proof that a balance of the sexes furthers the goal of better academic education." *Id.* *Craig*, and a more recent case, *Caban v. Mohammed, supra,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297, demonstrate that our allocation of the burdens of producing evidence and persuasion in *Berkelman* remains applicable to the case before us.

In *Craig*, the Court characterized the State's statistical evidence as demonstrating an "unduly tenuous 'fit' " between the gender classification and the asserted State objective, 429 U.S. at 202, 97 S.Ct. at 459 (footnote omitted), and concluded that "the showing offered by the [State] does not satisfy us that sex represents a legitimate, accurate proxy for the regulation of drinking and driving." *Id.* at 204, 97 S.Ct. at 460. Because the State's showing had failed, the Court held the statute unconstitutional.

In *Caban v. Mohammed, supra,* the Court declared unconstitutional a New York law which granted unmarried mothers, but not unmarried fathers, the right to withhold consent to adoption of their children. The Court rejected outright one of the State's asserted reasons—that mothers are emotionally closer to their children than fathers. 441 U.S. at 389, 99 S.Ct. at 1766. As an alternative justification for the gender-based distinction, the State argued "that the distinction between unwed fathers and unwed mothers is substantially related to the State's interest in promoting the adoption of illegitimate children." *Id.* The

---

3. While there is some question whether the government adequately raised the physical injury argument in the district court, the record

clearly shows that the argument was mentioned. Therefore, the issue is properly before us.

Court acknowledged that the "special difficulties attendant upon locating and identifying unwed fathers at birth," *id.* at 392, 99 S.Ct. at 1768, might tend to frustrate the State interest in promoting adoptions. In *Caban*, however, the father had established a substantial relationship with the child whose adoption he wished to prevent, and had admitted his paternity. Having concluded that the challenged classification was overbroad and not narrowly tailored to serve the purpose of promoting adoptions, the Court rejected the State's suggested justification, saying: "no showing has been made that the different treatment afforded unmarried fathers and unmarried mothers under [the challenged statute] bears a substantial relationship to the proclaimed interest of the State in promoting the adoption of illegitimate children." *Id.* at 393, 99 S.Ct. at 1769. *See also id.* at 409, 99 S.Ct. at 1777 (Stevens, J., dissenting) (majority placed burden of showing the adoption facilitation objective would be furthered "for *all* persons disadvantaged by the rule" on state).

*Craig* and *Caban* demonstrate that once an appropriate party invokes constitutional scrutiny of a statutory gender-classification, the government must shoulder the burdens of producing evidence and proving a constitutionally-sufficient justification.[4] They thus reaffirm our analysis in *Berkelman.*

Hicks and Davis triggered constitutional scrutiny in their argument before the district judge by showing that the statutes facially discriminate against males. Each had standing to bring this challenge, because if the statute were unconstitutionally underinclusive, the district court would be required to dismiss the indictment. This provided a sufficient "personal stake in the outcome of the controversy" to afford standing. *Linda R.S. v. Richard D.,* 410 U.S. 614, 616, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973) (*quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). *Cf. Orr v. Orr,* 440 U.S. 268, 272–73, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979) (husband had standing when seeking to avoid alimony obligation by challenging divorce statute for gender-based underinclusiveness). When Hicks and Davis produced evidence of facial discrimination on the basis of gender, the burden of showing a substantial relation between important governmental objectives and the gender-based means chosen to effectuate them shifted to the government.

### III

It remains for us to determine whether the government met its burdens of producing evidence and proof in this case. We conclude that it did not.

■ The government has articulated two purposes behind the statutory scheme: prevention of teenage pregnancy and prevention of physical injuries to young females.[5]

---

4. The government points out that a party challenging a *de facto* statutory classification, even one affecting a class protected by strict scrutiny, bears the burden of producing evidence that a statute, though facially-neutral, is applied in discriminatory manner. *See Hernandez v. Texas,* 347 U.S. 475, 480, 74 S.Ct. 667, 671, 98 L.Ed. 866 (1954). A fortiori, the government argues, a party challenging a statute containing a facial gender-classification, which receives less than strict scrutiny, must also bear the burden of producing evidence. The government's argument is a non-sequitur. Challengers of facially-neutral laws must point to discriminatory application to establish that a state classifies in a way that triggers constitutional scrutiny. But this step is unnecessary when the challenged classification is, as admitted by the government here, explicitly revealed on the statute's face. The question before us is

who bears the burdens of producing evidence and proving a constitutionally sufficient justification once a challenging party has identified a statutory classification which requires some scrutiny. When a challenging party establishes the existence of a *de facto* suspect classification, these burdens of justification lie with the government. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270 n.21, 97 S.Ct. 555, 566 n.21, 50 L.Ed.2d 450 (1977). *Caban, Craig,* and *Berkelman* illustrate that the same principle applies in challenges to either *de facto* or facial gender-classifications.

5. None of the parties has found any legislative history that sheds light on the actual intent underlying the statutes before us. But we need not decide in this case Congress' actual intent in passing these statutes, nor whether such

But to demonstrate the relation between these purposes and the statutory penalties, it merely stated that "only women can get pregnant" and that there "seems to be evidence that women are far more likely to suffer physical damage" than are males of the same age. On appeal, the government asks us to take judicial notice of the fact that "intercourse correlates highly with pregnancy." We do. Still, these naked assertions fail to carry even the government's burden of producing evidence in this case, let alone to prove its contentions.

The government's articulated objectives do suggest that Congress had some basis for defining criminal liability for heterosexual contact[6] in terms of the age of the female partner. But the government has produced not a shred of evidence demonstrating how either objective is "substantially" furthered by punishment only of the male. The absence of such evidence is particularly disturbing because the statute punishes males of any age, even in cases in which the male is younger than the female.[7] The government supplied no evidence that males necessarily always do or should bear greater responsibility for causing sexual contact. No evidence was produced explaining why punishment of males only is more likely to deter teenage pregnancies than punishment of just females, or of both partners. Nor has the government proven why, in sexual contact between females under 16 and males of any age, the female, but not the male, is necessarily always "victimized," or likely to suffer physical injury.

■ In the absence of any supporting evidence, we cannot accept the government's assertions, which imply the broad generalization that males of all ages are larger, stronger, more sexually aggressive, and less likely to suffer physical injury from sexual contact than females. The government had the burden of showing why gender is a "sufficiently 'accurate proxy,'" *Orr v. Orr, supra,* 440 U.S. at 280, 99 S.Ct. at 1112 (*quoting Craig v. Boren, supra,* 429 U.S. at 204, 97 S.Ct. at 460), for prevention of harm arising from contact which inherently requires the participation of both sexes. Particularly when criminal liability rests on the adequacy of the government's justifications, something more than the government's bare assertions is required. We do not question that the government's assertions might be correct. Other courts have reached differing conclusions about the adequacy of the personal injury and pregnancy prevention rationales.[8] But it was the government's obliga-

---

history or other evidence of legislative intent might ultimately be required to satisfy the government's burdens. As did the Court in *Craig,* we first assume the truth of the proclaimed objectives, 429 U.S. at 199 n.7, 97 S.Ct. at 458 n.7, and inquire whether the government has demonstrated a "substantial relation" between either of these objectives and the gender-based classification. *Id.* In view of our holding on this issue, we need not decide whether the government "simply is selecting a convenient, but false, *post hoc* rationalization," *id.,* nor whether the articulated purposes were, or had to be, "central." *See Berkelman v. San Francisco Unified School Dist.,* 501 F.2d 1264, 1269 (9th Cir. 1974).

**6.** Though we use "sexual contact" as the equivalent of conduct prohibited by the statutes in question, we do not thereby imply any legal definition of the term "carnal knowledge."

**7.** We are thus not asked merely to uphold a legislative judgment to give special protection to only one class of potential victims of exploitation (young females) by older persons, based on the unique harms flowing to that group.

Instead, we are asked to uphold a legislative judgment that young females are victims in any case of sexual contact, no matter what the age of the male partner.

**8.** The First Circuit overturned a similar New Hampshire statute in *Meloon v. Helgemoe,* 564 F.2d 602 (1st Cir. 1977), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978), but upheld a comparable Maine statute in *Rundlett v. Oliver,* 607 F.2d 495 (1st Cir. 1979). *Rundlett* is distinguishable from the case before us. In *Rundlett,* the State "offered substantial statistical and medical evidence to support its contention that young females, unlike young males, are often victims of physical injury resulting from a crime that is predominantly committed by males," *id.* at 502 (footnote omitted), and the court concluded that "the gender-based classification [of the statute] is a 'proxy' sufficiently accurate for restricting potentially physically injurious sexual intercourse via its criminal sanction." *Id.* at 503. The court did not reach the question whether the pregnancy prevention rationale would justify the classification. *Id.* at 502. In contrast, here we are

tion to provide us in this case with evidence supporting its claimed justifications. Here the government, having produced no evidence, would have us reject a criminal defendant's constitutional challenge in a factual vacuum. This we cannot do. We conclude, therefore, that on this record the government has not shown that its gender-based assignment of the roles of "victim" and "perpetrator" bears a substantial relation to its asserted goals.[9] Thus, we cannot say that either section 2032 or that portion of section 1153 pertaining to carnal knowledge of a female under 16[10] satisfies the due process clause of the Fifth Amendment. We therefore affirm the dismissal of the indictment.

AFFIRMED.

---

without any evidence relating the challenged gender classification to the asserted objectives of the statute.

Although the Fourth Circuit has twice rejected equal protection challenges involving the rape provisions of a West Virginia statute, the first decision, *Hall v. McKenzie*, 537 F.2d 1232 (4th Cir. 1976), preceded *Craig*, and the second decision concerned a disparity between punishment for forcible rape of a female and that for carnal knowledge of a male, a question not before us here. *Hall v. McKenzie*, 575 F.2d 481, 484–85 (4th Cir. 1978).

State court decisions since *Craig* have sustained statutory rape provisions against claims of sex discrimination. *See, e. g., Michael M. v. Superior Court*, 25 Cal.3d 608, 159 Cal.Rptr. 340, 601 P.2d 572 (1979); *State v. Gray*, 122 Ariz. 445, 595 P.2d 990 (1979); *Olson v. State*, 588 P.2d 1018 (Nev.1979); *Hall v. State*, 365 So.2d 1249, 1252–53 (Ala.Cr.App.1978), *cert. denied*, 365 So.2d 1253 (Ala.1979); *State v. Rundlett*, 391 A.2d 815, 822 (Me.1978).

9. Although the government concedes that it failed to suggest one further purpose before the district court, it now asks us to presume that a further goal of Congress in enacting these stat-

utes was the protection of minors from sexual abuse. We need not decide, however, whether such a presumption would be appropriate, for we observe that the assertion of this purpose, assuming it to be valid, would still fail for lack of any evidence in the record of its relation to the gender-based classifications at issue here.

10. We do not hold all of section 1153 unconstitutional. " 'Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' " *United States v. Jackson*, 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968) (quoting *Champlin Ref. Co. v. Corporation Comm'n*, 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932)) (footnote omitted). This case is like *Jackson, id.*, 390 U.S. at 586, 88 S.Ct. at 1218, in that the provisions we hold unconstitutional were added after the majority of the listed offenses. *Compare* Act of June 25, 1948, ch. 645, § 1153, 62 Stat. 758, *with* Pub.L. No.89–707, § 1153, 80 Stat. 1100 (1966).